**FILED**

DEC 2 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

809-811 Otis Place, N.W.  D.C.
**Tenant Association,**
                        **Plaintiff**

     v.

**Lakritz Adler Management L.L.C.**
Agent for Otis Place, L.L.C
**SERVE ON: Joshua Adler**
4326 8th th St. N.W.,Washington, D.C. 20011

**Mr. Robb M. Lakritz; (Individual)**
4326 8th St. N.W., Washington, D.C.  20011

**Mr. Joshua Adler; (Individual)**
4326 8th St. N.W.Washington,  D.C. 20011

**Gallatin Companies**
4326 8th St. N.W.
Washington, D.C.  20011

**Lakritz Adler Construction, L.L.C.**
**SERVE ON: Robb M. Lakritz**
4326 8th St. N.W.
Washington, D. C. 20011

**Lakritz Adler Development L.L.C.**
**SERVE ON:  Joshua Adler**
4326 8th St. N.W.
Washington, D.C. 20011

**Lakritz Adler Holdings, Inc.**
**SERVE ON: Joshua Adler**
2151 Florida Ave N. W.
Washington, D. C. 20008

**Mr. William Glover, (Individual)**
809-811 Otis Place,  N.W. #3
Washington, D.C.

CASE NUMBER  1:05CV02465

JUDGE: Emmet G. Sullivan

DECK TYPE: General Civil

JURY
ACTION

Eric Rome, (Individual)
One Thomas Circle N.W.  Suite 850
Washington, D.C.  20005

Eisen and Rome L.L.C.
One Thomas Circle, N.W. Suite 850
Washington, D.C.  20005

John Does (1-5)
        Defendants

---

## COMPLAINT

**809-811** Otis Place N.W. Tenant Association (hereinafter known as **Otis Place Tenant Association**) by its attorney, B. Marian Chou, sues Lakritz Adler Management L.L.C., Agent for Otis Place, L.L.C., (hereinafter known as **Lakritz Adler Management**); and Gallatin Companies; Lakritz Adler Construction, L.L.C.; Lakritz Adler Development L.L.C;  Lakritz Adler Holdings, Inc. and Eisen and Rome L.L.C.; (hereafter, Gallatin Companies; Lakritz Adler Construction, L.L.C.; Lakritz Adler Development L.L.C; Lakritz Adler Holdings, Inc.; Eisen and Rome L.L.C.; are referred to as "*Associated Organizations*") and  Mr. William Glover; Eric Rome, Esq.; John Does (1-5); as all the **Defendants,** and states:

## I.  PARTIES

### PLAINTIFF

1.  Plaintiff is a **tenant association** located at **809-811 Otis Place N.W.  D.C.** It has twenty rental units.  The tenants are mostly low and moderate income residents. It is properly registered with the D.C. Government.

### DEFENDANTS

2.    **Lakritz Adler Management**  is a corporation, engaged in the business of

2

Property management. They are licensed to do business in the District of Columbia. Their address is 4326 8th St. N.W. Washington, D.C. 20011. Lakritz Adler Management is a "person" for purposes of RICO, 18 U.S.C. Section 1962 **Lakritz Adler Management** is found, or transacts its affairs in the District of Columbia.

3. **Mr. Robb M. Lakritz** (individual) is a person for purposes of the Racketeer Influenced and Corrupt Organizations Act ("RICO), 18 U.S.C. Section 1962. Lakritz is found, has an agent or transacts his affairs in the District of Columbia, and other surrounding states. His address is 4326 8th St. N.W. Washington, D.C. 20011.

4. **Mr. Joshua Adler** (Individual) is a person for purposes of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962. Adler is found, has an agent or transacts his affairs in the District of Columbia, and other surrounding states. His address is 4326 8th St. N.W. Washington, D.C. 20011.

5. **Gallatin Companies** – is a company whose principal office is located in the District of Columbia. Gallatin Companies is a "person" for purposes of RICO, 18 U.S.C. Section 1962. Gallatin Companies resides, is found, has an agent or transacts its affairs in the District of Columbia, and surrounding states.

6. **Lakritz Adler Construction, L.L.C.** is a construction corporation doing business in the District of Columbia. Their address is 4326 8th St. N.W. Washington, D.C. Lakritz Adler Construction, L.L.C. is a "person" for purposes of RICO, 18 U.S.C. Section 1962. Lakritz Adler Construction resides, is found has an agent or transacts its affairs in the District of Columbia.

7. **Lakritz Adler Development L.L.C.** is a development corporation doing business in the District of Columbia. Their address is 4326 8th St. N.W. Washington, D.C. Lakritz Adler Development, L.L.C. is a "person" for purposes of RICO, 18 U.S.C. Section 1962.

3

Lakritz Adler Development resides, is found, has an agent or transacts its affairs in the District of Columbia.

8. **Lakritz Adler Holdings, Inc**. is a corporation with its principal offices located in the District of Columbia. Lakritz Adler Holdings is a "person" for purposes of RICO, 18 U.S.C. Section 1962. Lakritz Adler Holdings is found, has an agent, or transacts its affairs in the District of Columbia and other surrounding states.

9. **Mr. William Glover** was the first President of the <u>**Otis Place Tenant**</u> <u>**Association**</u> and is a tenant. His Address is 809-811 Otis Place, #3, N.W. D.C. Mr. Glover is a "person" for purposes of RICO, 18 U.S.C. Section 1962. Mr. Glover resides, is found, in the District of Columbia. He wrongfully and deliberately did not schedule an annual Meeting of the Association for new elections mandated by the bylaws for the month of March 2005 so that he could hold over and approve the **Lakritz Adler Management** deals. He withheld vital information of the sale of the building and the development contract plan of <u>**Lakritz Adler Management, and the defendants.**</u>

10. **Eric Rome**, Esq., for Mr. Glover's putative, Otis Tenant Association which was not the rightful one under the bylaws of the registered **Otis Place Tenant Association**. His address is One Thomas Circle, N.W., #850 Washington, D.C. 20005. Eric Rome is a "person" for purposes of the Racketeer Influenced and Corrupt organization Act (RICO), 18 U.S.C. Section 1962. Rome resides, is found, has an agent or transacts his affairs in the District of Columbia.

11. **Eisen and Rome L.L.C.** is a corporation engaged in legal work in the District of Columbia. Eric Rome is partner in that law firm. All correspondence and emails from Eric Rome were on the letterhead of the law firm of *Eisen and Rome L.L.C.* regarding the

subject of this lawsuit.    Meetings with the Otis Place Tenants Association occurred at this law firm.  This corporation is a "person" for purposes of RICO, 18 U.S.C. Section 1962.  The Eisen and Rome, L.L.C. is believed to conduct settlement between the old landlord- Crescent Properties, Gover and LaKritz and Adler in April 2005.

12. **John Doe Defendants 1-5** are persons whose identities are as yet unknown to Plaintiff, and who have directed or participated in the enterprise.  The Doe Defendants are also "persons" for purposes of RICO, 18 U.S.C. Section 1962.

## II.  STATEMENT OF FACTS AND ISSUES

### COUNT ONE - BREACH OF CONTRACT – ALL DEFENDANTS

13.  The Plaintiff realleges and incorporates by reference paragraphs 1-12 above.

14.  The development contract, offered by **Lakritz Adler Management and defendants** and approved by Mr. William Glover, defendant, was substantially altered from previous proposals under consideration to include demolition and new condominiums. This amounted to a gentrification of the Otis building which would not be affordable to the tenants, and nullified their first right of refusal under the laws of the District of Columbia, which include subchapter IV of the **D.C Rental Housing Conversion and Sale Act, D.C Code section 42-3404.02 et seq.  It (the Sale Act)** requires the owner of a housing accommodation to make an **"offer of sale"** to the tenants before the owner sells the accommodation. The **Otis Place Tenants Association** brings claims under both the **Sale Act** and the **Consumer Protection Procedures Act**, *D.C. Code Section 28-3901 et seq.* **(the CPPA),** alleging those defendants violated both statues by failing to comply with the **"offer of sale"** provision of the Sale Act.  The **Otis**

**Tenants Association** does have standing to bring this action. Defendants did not fully comply with other disclosure requirements under the **Sale Act**.

15.    The **Sale Act** requires that before the owner of a housing accommodation may sell the accommodation, the owner must make an offer of sale to the tenants. **D.C. Code § 42-3404.02.** Upon receipt of the offer of sale, the tenants had a number of rights, including the right to ask for and obtain various types of information from the owner, the right to form a tenant organization to negotiate for the purchase of the accommodation, and a right of first refusal with respect to any third party contract for the sale of the accommodation. This case is about two transactions, the sale of the Otis building to **Lakritz Adler Management** for One million and seventy five thousand dollars ($1,075,000.00) in April 2005; and the development contract by the new owners, Mr. Robb **Lakritz, and Mr. Joshua Adler**, Defendants, that violated the tenants' rights under the Sale Act; and whether the tenants now have any available remedy for that violation.

16.    Starting in 2004, the owner of Otis building, *Crescent Property Inc.* began negotiating for the sale of the building. The building has twenty rental units. The earliest draft of the development agreement presented to the tenants was with *Tenacity Group* L.L.C., and called for only renovation of the Otis building. By the time the transfer actually closed, the development contract with **Lakritz Adler Management**, the so called parties, had agreed to structure the transfer in a way that the defendants were allowed to circumvent the real tenant's rights under the **Sale Act.** In exchange for the purchase price of $1.75 million dollars, the authentic Otis Place Tenant Association lost all control of the outcome. The goal of the **Lakritz Adler Management** and defendants,

was to buy of the Otis building was to "*stay out of the clutches of the tenants' right of first refusal law*". The legitimate tenants of the registered **Otis Place Tenants Association** building only learned of the sale to **Lakriz Adler Management** after the fact. This complaint seeks various forms of relief, including a declaratory judgment that the sale to **Lakritz Adler Management** was invalid, an injunction rescinding the sale and requiring **Lakriz Adler Management** to make an offer of sale to the tenants, and monetary damages. Discovery will show that the two transactions before the court were a sham. What started as a simple traditional fee simple sale of the building, ended as a convoluted demolition of the building, an elaborate attempt to circumvent the tenants' rights. The structure, and the timing, of the transactions, and the wrongful negotiation with a putative, president Glover, by the defendants, served no other purpose. These factors should be particularly interesting to the court, allowing new owners to circumvent the pith of the **Sale Act.**

17.    The court has jurisdiction to consider the merits of the case since the Plaintiff's tenant organization within the meaning of the Sale Act has standing to pursue Sale Act claims, since it was registered pursuant to **D.C. Code Section 42-3404.11 (1).** The **Otis Place Tenants Association**, its rightful President being Mr. Augusto Moreno, does have standing to represent the interest of individual tenants, and thus the **Otis Place Tenants Association** is the "*real party in interest*". See **West End Tenants, 640 A2d at 721 n. 1.**

18.   Defendants, Lakritz Adler's attorney, Mr. Luchs, of D.C. based *Greenstein, Delorme & Luchs* has been named in the press frequently, for providing counsel on structuring the transfer of real estate so it does not trigger the tenants' right to purchase. These practices have been the subject of recent hearings by the D.C.

Councilman, Jim Graham, Chairperson on the Committee on Consumer and Regulatory

Affairs, who recently announced a public oversight roundtable on "*Vacating Buildings*

*for Rehabilitation*" and named the specific rental properties to include the **809-811 Otis**

**Place N.W.** address which is the subject of this lawsuit.  Mr. Augusto Moreno, the

legitimate President of the **Otis Place Tenant Association** submitted his testimony to the

Chairman who sent his representatives to the **Otis Place Tenant Association's** recent

meeting in November 2005.  In addition, Mr. Luchs has been quoted in the *Washington*

*Post* expose on examples of how the D.C. Laws have been circumvented and how tenants

have suffered at the hands of developers and certain lawyers. The press has just scratched

the surface including how judges have wrongfully relied on misstatements of the law by

layman within the Department of Consumer and Regulatory Affairs of the D.C.

Government. The head of the D.C. rental office was recently fired amid controversy

exposed by the **Washington Post**. over clearing out four residential buildings for

renovation and the questionable studies that justified that action in December 2005.

### COUNT TWO – COMPLAINT TO NULLIFY FRAUDULENT CONVEYANCES
### ALL DEFENDANTS

19  Plaintiff realleges and incorporates by reference paragraphs 1-18 above.

20    **Lakritz Adler Management** entered into an agree to purchase 809-811 Otis

Place N.W. Washington, D.C., an apartment building with (20) twenty, rental units in

April 2005.  The agreement was signed by Mr. Glover, the purported President of the

Otis Place Tenant Association.  The Association had no knowledge of the **Lakritz Adler**

**Management** " *Development Proposal*", and was counting on the *Tenacity Group*

L.L.C., to be the buyer of the building.  This amounted to a sudden switch by Mr. Glover,

defendant.  The *Tenacity Group* L.L.C.'s proposal was based on a renovation plan to

eliminate the existing hazards with tenants being allowed to re-enter their apartments after the construction. The **Lakritz Adler Management** Plan from the start was demolition of the building and condo conversion while the tenants were led to believe it was renovation.

21. Under the bylaws of the **Otis Place Tenant Association**, the annual meeting was to have been held on March 2005 for the election of officers. This mandated first, annual meeting following the Association's registration in March of 2004 was never called by the putative, President, William Glover, Defendant. He deliberately in clear contravention of the bylaws wrongfully held over, and did not call for an election as mandated to ensure the sale of the building to **Lakritz Adler Management**, to benefit the defendants, without any consultation with the membership of the legitimate **Otis Place Tenants Association**.    Finally, when the Association's Vice-President, Mr. Moreno, learned of the sale of the Otis building without the knowledge of the association, he made inquiry, and called for an emergency meeting of the **Otis Place Tenant Association**. The tenants learned of the sale of the building from flyers in the halls. The tenants were panicked about these events

22. At the May 29th, 2005, **Otis Place Tenants Association** meeting, Mr. Glover, the defendant, came to the meeting, with no explanation for the approval of the **Lakriz Adler Management** sale, and the other illegal actions of the defendants. Mr. Glover had alcohol on his breadth, and abruptly left the meeting. After consultation with University Legal's, Ms. Victoria Taylor, earlier in the week, Mr. Moreno, felt comfortable calling for a vote on an amendment to the bylaws to allow a vote on new officers that night. A quorum of the association was present and the voters chose to allow the election of officers to

proceed. The voters duly elected, Mr. Moreno, as President of the **Otis Place Tenant Association** in compliance with all the rules and bylaws of the organization. The tenants reconfirmed Mr. Moreno second time as President by the Association as well on November 8, 2005.

23. Mr. Glover received a letter dated June 22, 2005 from President Moreno of the **Otis Place Tenant Association** clearly stating the results of the election. Additionally on July 14, 2005 President Moreno wrote a letter to former President Glover in response to his letter requesting a meeting of the Association. These letters are proof that both Mr. Glover and Eric Rome acknowledged the fact that Mr. Moreno was duly elected President of the Association. These two letters were copied to Mr. Eric Rome, the so called, Counsel to the Association. To date, President Moreno has not been able to find in the records of the Association an original copy of Counsel Rome's retainer Agreement. President Moreno did learn that the Association's putative Counsel, Mr. Rome, did receive **($20,000) twenty thousand dollars,** from the Defendant, buyers of the building, **Lakritz Adler Management** at the closing. The **Otis Place Tenant Association** had no knowledge that Mr. Eric Rome was being paid by the defendant, **Lakritz Adler Management.** Discovery will have to reveal how Mr. Eric Rome, the defendant, actually got involved with the **Otis Place Tenant Association**; what type of agreement he had with them; how any agreement was amended to included monies from **Lakritz Adler Management,** as mandated by the D.C. Bar for all representation; who approved such an amendment; and why he was paid twenty thousand dollars *($20,000)* by the buyers of the building, **Lakritz Adler Management** at closing; if that amount was divulged to the legitimate **Otis Place Tenant Association**; and why he continued to consult, and plan for

the building's development with Mr. William Glover, defendant, knowing he was the **deposed** President of the **Otis Place Tenant Association** since May of 2005. Mr. Rome received letters from Mr. Moreno as the President of the Otis Tenant Association and deliberately and wrongfully chose to ignore these proper notices.

24.    The Association did receive assistance with its D.C. filings, and bylaw amendments from the DCCH, Victoria Taylor, and further advice on how to handle the controversy with Mr. William Glover, Defendant and deposed president. They did not trust Eric Rome's legal advice at that point and chose to go elsewhere for guidance. The **Otis Place Tenants Association** remains confused as to who employs Mr. Rome and how his receipt of monies form **Lakritz Adler Management** presents an ethical conflict with their rights. The **Otis Place Tenants Association** does not feel that they had an independent attorney in **Eric Rome, Defendant**, in terms of determining whether they were making prudent decisions in rejecting various proposals. They needed independent representation for substantive decisions impacting the future of their homes.

25. Since the bylaws of the **Otis Place Tenant Association** were deliberately, and repeatedly ignored with malice by Mr. William Glover, defendant, so that he could single handedly agree to the sale of the building to **Lakritz Adler Management** contrary to the intent of the **Otis Place Tenants Association** to endorse the *Tenacity Group L.L.C.*. proposal which was pending, the sale of the Association's property should be nullified. At all times *Tenacity Group L.L.C.*. was capable and ready to perform the necessary renovations under their proposed contract so the tenants could have remained in their renovated apartments and received the necessary assistance with financing their apartments.

26. The sale of the Otis Apartment complex to Defendants, **Lakritz Adler Management** was <u>fraudulent</u> in that it did not have the approval of the rightful **Otis Place Tenant Association's** Directors, in accordance with its bylaws duly filed and registered with the D.C. government. Mr. William Glover, defendant, breached his duties of President and implied covenant of good faith and fair dealing.

27.    President Moreno immediately contacted Councilman, Jim Graham, and other D.C. officials to expose this scandal to the press, specifically, the *Washington Post* who had written several recent stories on the topic of <u>*loopholes in the D.C. law*</u> which allow tenant's rights to be trampled.

28. The **Otis Place Tenant Association** maintains that the sale and development contract signed by Mr. Glover should be nullified, and there exists an actual controversy of a practicable issue between the Plaintiff and Defendants within the jurisdiction of this Court involving the rights and liabilities of the parties under a contract of sale and development contract which controversy may be determined by a judgment of this Court. This justiciable issues go to the validity of the instrument contracts (two); the violation of D.C. laws, and moreover, the violation of federal statutes.

## COUNT THREE – CIVIL RICO EXTORTION – ALL DEFENDANTS

29. Plaintiff realleges and incorporates by reference paragraphs 1-28 above.

30. Defendants did personally and or through the conduct of his agents, on a number of occasions, extort, attempt to extort, and conspire, to extort money affecting interstate commerce, and conspiring to obtain property from others by wrongful use of power and coercion. Defendants failed to keep the building known as **809-811 Otis Place, N.W.** in a habitable condition, and threatened tenants with eviction if they did not sign various

waivers to allow defendant's development plan to go forward. They called tenants at their jobs and were instructed not to listen to Mr. Moreno, the rightful President of the **Otis Place Tenants Association**. They were told not to let him address the group or talk at the November2005 meeting.  Mr. Moreno had to schedule the December 19, 2005 annual meeting to be held at the local Police Station with the consent of the membership, because the November 2005 meeting was so chaotic due to instructions from LaKritz Adler Management to cause chaos and confusion.

31.    The unlawful actions of **Lakritz Adler Management and the defendants** should be treated as **retaliatory eviction** of the tenants.  The property was not properly maintained by allowing rats in the building; ceilings to collapse; no mailboxes; poorly lit halls in common areas; and many needed repairs that failed to be addressed and caused health hazards like mold; and instilled fear into many residents.

32.  The tenants, specifically Tenant, Mr. Suggs, have taken many colored pictures of these hazards for counsel to review and present to Court.   They felt coerced to sign the papers **Lakritz Adler Management, and defendants** was presenting to them.

33. In addition, **Lakritz Adler Management, and Defendants,** have resorted to harassment of some tenants on **immigration ground** and have authorized their agent, and Property Manager, on the grounds, to go door to door asking to see immigration original documents to further intimidate and try to diminish  the tenants rights and force them to sign waivers and have asked these Spanish speaking residents to **sign possible proxy documents** for their putative, Tenant Association headed by Defendant, William Glover, for their December 2005 meeting if they cannot attend. To carry out their plan, Mr. A. Liberman, property manager for LaKritz Adler Management, LLC, personally knocked

selected tenant's door to ask them to attend so called "tenant meeting" and for signatures if tenants could not attend. These actions are reprehensible and must be stopped. The residents are getting quite confused by all these shenanigans to obfuscate the real issue and wonder how they could have the nerve to announce yet another election. Some tenants were smart enough to have kept these taped intimidating messages from the property manager on their answering services for Counsel's benefit and for the court's ultimate review.

34. Such activities by the defendants constitute "**racketeering activity**" under RICO, 18 U.S.C.§1961.

35. The Defendants were employed or associated with an enterprise, described above, engaged in or affecting interstate commerce and has conducted or participated in the conduct, operation, and or management of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962.

36. Any person injured in his business or property by reason of violations of section 1962 *of RICO* may recover threefold the damages sustained and the cost of the suit including reasonable attorney's fees *18 U.S.C. § 1964 (c)*.

## COUNT FOUR - MONETARY TRANSACTIONS IN ILLEGAL PROCEEDS (18 U.S.C. section 1957 ) - ALL DEFENDANTS

37. Plaintiff realleges and incorporates by reference paragraphs 1-36 above.

38. As set forth above, all the defendants, on a number of occasions, engaged and attempted to engage and conspired to engage in monetary transactions involving property derived from specified unlawful activity, namely, fraud and extortion, of a value greater than $10,000, knowing that the property was derived from unlawful activity.

14

39. The practice by these defendants, of repeatedly and knowingly engaging or attempting to engage in monetary transactions involving criminally derived property valued at more than $10,000 as described above, constitutes "**racketeering activity**" under *RICO, 18 U.S.C.§ 1961 (1).*

40. As a result of the aforesaid acts, Plaintiff was placed at a disadvantage in conducting its activities in compliance with D.C. statues and federal laws and should be allowed as an injured party by reason of violations of Section 1962 of RICO may recover threefold the damages sustained and the cost of the suit including reasonable attorneys' fees.  18 U.S.C. 1964 (c).

## COUNT FIVE – CONSPIRACY – ALL DEFENDANTS

41.  Plaintiff realleges and incorporates by reference paragraphs 1-40 above.

42. Defendants conspired to violate **RICO, 18 U.S.C. § 1962** in that they all agreed  to be a part of or associated with the enterprise, described above, engaged in or affecting interstate commerce and to conduct or participate in the conduct, operation and or management of the enterprise's affairs through a pattern of "**racketeering activity**" in violation of **18 U.S. C. § 1962 (c).**   Mr. Robb Lakritz and Joshua Adler devised a scheme like this to coerce tenants to approve their plan, threatening those who declined their plan, and setting up a shadow enterprise to make it all possible.

43.      The injuries suffered by Plaintiff were proximately caused by the acts of the defendants.

### III.PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court to grant:

A.  Enter judgment in its favor and against the Defendants (collectively, defendants) on all counts of the complaint.

B.  Order the payment from defendants to Plaintiff monetary damages, in an amount to exceed **six (6) million dollars** in actual damages and an additional amount to be determined at trial , which shall include an amount equal to **three times** the actual damages it has sustained and all costs incurred, including reasonable attorney's fees, in bringing this action;

C.  Enjoin Defendants from engaging in conduct constituting further violations of the law;

D.  **Stay all eviction actions pending** from the Otis  building in any other Court until this Federal Court's final ruling;

E.  Declare and recognize Mr. Augusto Moreno and his group has been the righteous association to represent 809-811 Tenant Association.

F.  Issue a <u>Declaratory Judgment</u> that the sale of the Otis Building to **Lakritz Adler Management**  was **invalid;**

G.  Require **Lakritz Adler Management** to make an offer of sale to the tenants of their building on Otis Place as the original $1,075,000.00;

H.  Grant such other and further relief as this Honorable Court deem just and reasonable.


### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.


Respectfully submitted,



B. Marian Chou,  Bar No. 433279
Counsel for the Plaintiff
Address:
800 7th St.  N.W. Suite 201
Phone (202) 783-2794
Fax (202) 898-1995
bmchou@mindspring.com

Date:  December 23, 2005

Augusto D. Moreno
President, 809-811 Otis Place
Tenant Association