UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| 809-811 OTIS PLACE, N.W. D.C. | * | |
| TENANT ASSOCIATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: **1:05CV02465 (EGS)** |
| | * | |
| LAKRITZ ADLER MANAGEMENT | * | |
| L.L.C., *et al.*, | * | |
| | * | |
| Defendants. | * | |

### MOTION OF DEFENDANTS ERIC ROME, ESQUIRE AND EISEN & ROME, P.C. TO DISMISS

Defendants, Eric Rome, Esquire and Eisen & Rome, P.C., by and through their undersigned counsel and pursuant to LCvR 7 and Fed. R. Civ. P. 12(b)(6), hereby respectfully move this Honorable Court for the entry of an Order dismissing the Complaint filed herein for failure to state any claim upon which relief may be granted, as a matter of law.

This dispute arises from a condominium conversion. A disappointed minority of owners seeks to undo a valid transaction and, in its exuberance, asserts unfounded claims against the Association's attorneys. As will be demonstrated, none of these claims can proceed, as a matter of law.

Additional grounds are set forth in the accompanying Memorandum Of Points And Authorities which is incorporated herein, by reference.

Respectfully submitted,

JORDAN COYNE & SAVITS, L.L.P.


By: _David P. Durbin_____

    David P. Durbin  #928655
    1100 Connecticut Avenue, NW
    Suite 600
    Washington, DC  20036
    (202) 496-2804
    Fax:  (202) 496-2800
    E-mail:  d.durbin@jocs-law.com

    Counsel for Defendants, Eric Rome, Esquire
    and Eisen & Rome, P.C.


## CERTIFICATE OF SERVICE


I HEREBY CERTIFY that a true copy of the foregoing Motion Of Defendants Eric

Rome, Esquire And Eisen & Rome, P.C. To Dismiss, together with its accompanying

proposed Order, was mailed, first class and postage prepaid, this ___3rd___ day of

February, 2006 to:

    B. Marion Chou, Esquire
    Suite 201
    800 7th Street, NW
    Washington, DC  20001-3851
     Counsel for Plaintiff

- 2 -

Paul Kiernan, Esquire
Rafael Alfonzo, Esquire
HOLLAND & KNIGHT, LLP
Suite 100
2099 Pennsylvania Avenue, NW
Washington, DC  20006
  Counsel for Lakritz Adler Management, LLC, Robb
  M. Lakritz, Joshua Adler, Lakritz Adler
  Construction L.L.C., Lakritz Adler Development, LLC
  and Lakritz Adler Holdings, Inc.


_____
David P. Durbin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

809-811 OTIS PLACE, N.W. D.C.    *
TENANT ASSOCIATION,    *
    *
       Plaintiff,    *
    *
    v.    *   Case No.:  **1:05CV02465 (EGS)**
    *
LAKRITZ ADLER MANAGEMENT    *
L.L.C., *et al.*,    *
    *
       Defendants.    *

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION OF DEFENDANTS
<u>ERIC ROME, ESQUIRE AND EISEN & ROME, P.C. TO DISMISS</u>**

<u>INTRODUCTION</u>

Plaintiff's Complaint alleges violations of District of Columbia and Federal

statutes as well as common-law fraud.  Plaintiff asserts that Defendants Eric Rome,

Esquire and the firm of Eisen and Rome, P.C. (together "Defendants RE&R") breached

the Rental Housing and Conversion Act, D.C. Code § 42-3401.01 <u>et seq.</u> (2001 ed.)

("Conversion Act") and the Consumer Protection Procedures Act, D.C. Code § 28-3901

<u>et seq.</u> (2001 ed.) ("CPPA"); committed common-law fraud; and violated the Racketeer

Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961 (2004 ed., as

amended), by engaging in supposed extortive practices.

As discussed more fully below, Plaintiff has failed to assert any facts entitling it to

relief with respect to any of its claims.  Defendants RE&R are not subject to the

Conversion Act or the Consumer Protection Act; Plaintiff fails to state any facts to

- 4 -

support a claim of fraud, particularly with the particularity required under Fed. R. Civ. P. 9(b); and the RICO statute does not apply to the facts asserted by Plaintiff. Therefore, dismissal of all counts is warranted.

<u>STANDARD OF REVIEW</u>

A motion to dismiss should be granted only when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). While the Plaintiff "enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of the complaint," <u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1254 (D.C. Cir. 1987), a pleader does not have carte blanche since "bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of either type of motion." <u>Id.</u>  Moreover, the court is not required to accept inferences unsupported by the facts. <u>Smith v. Koplan</u>, 362 F.Supp.2d 266, 268 (D.D.C. 2005) (citation omitted).

Plaintiff's Complaint is rife with innuendo and speculation.  As a substitute for well-pleaded facts, Plaintiff invokes the name of a District of Columbia council member, refers to council oversight hearings, cites articles in the *Washington Post*, maligns individual defense counsel and slanders at least one of the individual Defendants. Excised of its rampant hyperbole, the Complaint lacks a sufficient legal foundation to entitle Plaintiff to any relief and must, therefore, be dismissed.[1]  See <u>Robertson v. Dean</u>

---

[1] The Complaint is fundamentally suspect as well.  The attorney for the Plaintiff has been quoted in a news story in connection with proving the RICO claim as follows:  "I am not going to pretend that I understand that, per se."  "Apartment dispute goes to court." *The Examiner* (1/5/06) (attached hereto).

Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.1984) ("A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim") (citing 2A J. Moore, Moore's Federal Practice, ¶ 12.08 at 2271 (2d ed. 1982)).

BACKGROUND

Plaintiff represents itself as the "tenant association located at 809-811 Otis Place, N.W. D.C." Complaint, at ¶ 1.[2] Defendant Eric Rome, an attorney representing "Mr. Glover's putative, Otis Tenant Association . . . resides, is found, has an agent or transacts his affairs in the District of Columbia." Complaint, at ¶ 10. Defendant "Eisen & Rome, L.L.C.[3] is a corporation engaged in legal work in the District of Columbia." Complaint, at ¶ 11. Eric Rome "is a partner in that law firm." Id.

Plaintiff asserts "[t]his case is about two transactions, the sale of the Otis building to Lakritz Adler Management for One million and seventy five thousand dollars [sic] ($1,075,000.00) in April 2005; and the development contract by the new owners." Complaint, at ¶ 15. According to Plaintiff, Defendants RE&R's role in these two transactions violated the Conversion Act and the CPPA, constituted a fraud and violated the RICO statute. Plaintiff's unsupported allegations will be addressed in turn.

_____

[2] Plaintiff's status as the true tenant association and proper representative of the tenants of 809-811 Otis Place, N.W. (Complaint, at ¶ 17) is very much in dispute and will be the subject of a collateral challenge. For the limited purpose of the instant Motion, however, it will be conceded as true. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999) (when judging a motion to dismiss under Rule 12(b)(6), a court should "accept the allegations contained in [the] complaint as true for purposes of [the] case").

[3] Eisen & Rome is, in fact, a P.C., incorporated in the District of Columbia.

<u>ARGUMENT</u>

**I.    Defendants RE&R Are Not Subject To A Claim Under The Conversion Act**

Plaintiff maintains that:

• In 2004, "the owner of the Otis building, Crescent Property began negotiating for the sale of the building." Complaint, at ¶ 16.

• The earliest draft of the development agreement presented to the tenants was with <u>Tenacity Group L.L.C.</u>, and called for only renovation of the Otis building." Complaint, at ¶ 16.

• Defendants offered a development contract to demolish and develop a 20-unit apartment building located oat 809-811 Otis Place, N.W., Washington, DC (the Otis Place Property). Complaint at ¶ 14.

• This development contract was accepted by Defendant William Glover (the President of the Otis Place Tenant Association and a resident of Unit #3 in the Otis Place Property – Complaint, at ¶ 9). Complaint, at ¶ 14.

• By the time the transfer actually closed, the development contract with Lakritz Adler Management, the so called parties, had agreed to structure the transfer in a way that the defendants were allowed to circumvent the real tenant's rights under the Sale Act." Complaint, at ¶ 16.

• "In exchange or the purchase price of $1.75 million dollars, the authentic Otis Place Tenant Association lost all control of the outcome." Complaint, at ¶ 16.

• The goal of the Lakritz Adler Management and defendants, was to buy of [sic] the Otis building was to '*stay out of the clutches of the tenants' right of first refusal law*'". [sic] Complaint, at ¶ 16 (emphasis and italics in original).

• The legitimate tenants of the registered Otis Place Tenants Association building only learned of the sale to Lakriz Adler Management after the fact." Complaint, at ¶ 16.

Plaintiff maintains these events led to the "gentrification of the Otis building" and

that ultimately "nullified [Plaintiff's] first right of refusal" under the Conversion Act.

Complaint, at ¶ 14.   Plaintiff seeks, by way of remedy, declaratory, injunctive, and monetary relief.  Complaint,  at ¶ 14.

Plaintiff's claims fail to state a claim, as a matter of law, as the Conversion Act does not govern the conduct of third party attorneys who possess no legal or equitable right to a disputed property.  In other words, Defendants RE&R are not subject to this statute.  The Rental Housing and Conversion Act, (D.C. Code § 42-3401.01, *et seq.*).

The Conversion Act represents a detailed statutory scheme articulating the respective rights and responsibilities flowing between landlords of multi-unit dwellings and their tenants.  A civil cause of action is properly triggered under the Act "when (1) landlord fails to present tenant with price or terms as favorable as those offered to third party; (2) landlord fails to contract with tenant on same price/terms within reasonable time period; (3) owner or tenant intentionally fails to comply with statute."  West End Tenants Ass'n v. George Washington University, 640 A.2d 718, 726 n. 13 (D.C. 1994).

Courts interpreting the Conversion Act have uniformly recognized only two parties with standing to sue or be sued – an owner and a duly constituted tenant organization.  See Stanton v. Gerstenfeld, 582 A.2d 242, 245 (D.C. 1990) ("if the conduct of an owner gives rise to any basis for a civil action against the owner under § 45-1653, it is only the tenant organization that is 'aggrieved' as that term is used in § 45-1653 and, therefore, it is only the tenant organization that can bring a civil action against the owner under the statute").[4]

_____

[4]  D.C. Code § 45-1653 (now § 42-3405.03) provides:  "An aggrieved owner, tenant, or tenant organization may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and, upon prevailing, may seek an award of costs and reasonable attorney fees.  In an equitable action, the public policy of this chapter favors the waiver of bond requirements to the extent permissible under law or court rule."

Defendants RE&R fall in neither category.  Plaintiff does not identify them as sellers or tenants of the Otis Place Property.   Plaintiff does not allege they possess any leasehold or ownership interest.

Mr. Rome is a Defendant by virtue of his representation of "Mr. Glover's putative, Otis Tenant Association," Complaint, at ¶ 10.  Eisen & Rome is a defendant: (1) because "Eric Rome is a partner in that law firm"; (2) because "[a]ll correspondence and emails from Eric Rome were on the letterhead of the law firm of Eisen and Rome L.L.C. regarding the subject of this lawsuit"; (3) because "meetings with the Otis Place Tenants Association occurred at this law firm"; and (4) because "Eisen & Rome, L.L.C. [sic] is believed to conduct settlement between the old landlord – Crescent Properties, [co-defendants] Gover and Larkitz and Adler in April 2005."  Complaint, at ¶ 11.  These relationships are too tenuous to bind Defendants RE&R under the Conversion Act.  The Act, which governs the rights of tenants and owners of multi-unit buildings does not cast a net over third party attorneys simply because they may have provided advice, correspondence or a meeting place for a tenants association.

Beyond this, Plaintiff may seek only enforcement of the Conversion Act, costs, and reasonable attorney fees.  Damages are precluded.  See Redmond v. Birkel, 797 F.Supp. 36, 40 (D.D.C. 1992) ("Nothing in this section § 45-1653 suggests that plaintiffs can collect damages. On the contrary, the language of § 45-1653 allows plaintiffs to seek only enforcement of the act, costs, and reasonable attorney fees") (citing D.C. Council 3-222, § 411 (Nov. 13, 1979)).  Defendants RE&R possess no equitable or legal interest in the Otis Place Property.  As such, they cannot be enjoined to transfer the Otis Place Property, set aside the April 2005 sale, or specifically perform any

statutory provision.  They are simply not proper parties under the Conversion Act and Count One of Plaintiff's Complaint seeking relief under the act must be dismissed for failure to state a claim.

### II.     The Consumer Protection Procedures Act Does Not Extend To The Professional Services Of Lawyers

Plaintiff further alleges in the second half of Count One that Defendants RE&R violated the Consumer Protection Procedures Act (CPPA).  This claim is without merit.

The CPPA was promulgated "to provide procedures and remedies for a broad spectrum of practices which injure consumers."  <u>Atwater v. District of Columbia Dep't of Consumer & Reg. Affairs</u>, 566 A.2d 462, 465 (D.C. 1989).   Its scope, while broad and generally inclusive of real estate sales and lease transactions, <u>DeBerry v. First Gov't Mortgage & Investors Corp.</u>, 743 A.2d 699, 701-02 & 702 n. 8 (D.C. 1999), expressly does not extend to professional services of lawyers.  D.C. CODE § 28-3903(c)(2)(C). <u>See</u> <u>also</u> <u>Banks v. Department of Consumer & Regulatory Affairs</u>, 634 A.2d 433, 437 (D.C. 1993) (while CPPA does not encompass actions of lawyers it does reach to non-lawyers engaged in the practice of law).   Plaintiff's attempt to invoke the CPPA against Defendants RE&R is defective as a matter of law and Count One must, therefore, be dismissed.

### III.     <u>Plaintiff Cannot State A Claim Of Fraud Against These Defendants</u>

Count Two alleges that the Otis Place Property sale was "fraudulent" and the transfer of title constituted a "fraudulent conveyance" that must be "nullified." Complaint, at ¶¶ 25 and 28.   Here, too, Plaintiff's allegation cannot withstand legal scrutiny.

- 10 -

Plaintiff's characterization of the Otis Place Property Sale as a "fraudulent conveyance" (Count Two – "Complaint to Nullify Fraudulent Conveyances All Defendants") reflects a fundamental misunderstanding of the law of fraudulent conveyances. The Fraudulent Conveyance Act of 1995, D.C. Law 11-83, D.C. CODE §§ 28-3101-3111 (1996), seeks to prevent transfers by a debtor made with the intent to hinder, delay, or defraud any creditor of the debtor. D.C. CODE § 28-3104. To the extent Plaintiff is attempting to assert such a claim against Defendants RE&R, it must be dismissed. The Complaint makes no reference to Defendants RE&R as debtors, to Plaintiff as creditors, or to any outstanding obligation Defendants RE&R are seeking to surreptitiously avoid. Roberts & Lloyd, Inc. v. Zyblut, 691 A.2d 635, 637 (D.C. 1997).

If one were to assume that Plaintiff utilizes the phrase "fraudulent conveyance" in its colloquial sense and is maintaining that the April 2005 sale of the Otis Place Property was the result of fraudulent conduct, the claim plainly fails to state a claim and must be dismissed.

A *prima facie* case of fraud requires a showing of (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken by plaintiff in reliance upon the representation, (6) which consequently resulted in provable damages. Isen v. Calvert Corp., 379 F.2d 126, 129-30 (D.C. Cir. 1967).

The gravamen of Count Two is that "[t]he sale of the Otis Apartment complex to Defendants, Lakritz Adler Management was fraudulent in that it did not have the approval of the rightful Otis Place Tenant Association's Directors, in accordance with its bylaws duly filed and registered with the D.C. government." Complaint, at ¶ 26.

- 11 -

Rule 9(b) of the Federal Rules of Civil Procedure mandates that "(i)n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  This jurisdiction interprets this rule to require a plaintiff in fraud to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." Kowal v. MCI Communications, Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994) (citation omitted).

The rationale underlying the particularized pleading requirement is twofold: (1) it guarantees Defendants sufficient information to prepare a response and (2) it "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude."  United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1386 (D.C. Cir.1981) (citations omitted).

Plaintiff's Complaint fails to assert its claim in fraud with the requisite particularity against these Defendants.

Stripped of its extraneous verbiage, Plaintiff appears to be alleging it was unhappy with Mr. Rome's representation and was unaware he had received a fee from Defendant Lakritz Adler Management.  These allegations, given the widest latitude of deference, do not give rise to any legally cognizable cause of action – much less one sounding in fraud.   No particularized descriptions of false statements or reasonable reliance are set forth in the Complaint.

Plaintiff seems to hope the discovery process will provide the facts Plaintiff should have had at its disposal before filing its Complaint. See Complaint, ¶ 23.  Plaintiff

compensates for its inadequacies by maligning Mr. Rome and calling his professional ethics into question.  It is to avoid this precise scenario — whereby a plaintiff substitutes facts with inflammatory rancor about conspiracies, racketeering, and fraud — that courts have held: "(t)he need for this protection (against vague allegations of fraud) is most acute where the potential defendants are professionals whose reputations in their field of expertise are most sensitive to slander."  Rich v. Touche Ross & Co., 68 F.R.D. 243, 245 (S.D.N.Y.1975). See also Felton v. Walston & Co., 508 F.2d 577, 581 (2d Cir. 1974) ("one purpose of rule 9(b) is to protect reputations of . . . professionals from scurrilous and baseless allegations of fraud").  Plaintiff's baseless claims here in Count Two must be dismissed.

### IV.    Plaintiff's Claim Under The Racketeer Influenced And Corrupt Organization Act Fails To State A Claim Upon Which Relief May Be Granted

Counts Three, Four and Five purport to allege civil RICO violations arising out of Defendants' purported "attempt to extort, and conspire to extort money affecting interstate commerce, and conspiring to obtain property for others by wrongful use of power and waivers to allow defendant's [sic] development plan to go forward." Complaint, at ¶ 30.

Specifically, Plaintiff accuses Defendants RE&R of interfering with association meetings, Complaint, at ¶ 30; not maintaining the Otis Place Property, Complaint, at ¶ 31; "instill[ing] fear into many residents, Complaint, at ¶ 31; and, "coercing" tenants to sign "the papers Lakritz Adler Management and defendants was presenting to them, Complaint, at ¶ 32.

- 13 -

These "shenanigans," according to Plaintiff, were leveled by Defendants to "obfuscate the real issue and wonder how they could have the nerve to announce yet another election", Complaint, at ¶ 33, and "constitute 'racketeering activity' under RICO, 18 U.S.C. ¶ 1961." Complaint, at ¶ 34.   As with Plaintiff's other counts, Counts Three, Four and Five fail to state a claim, have no basis in law, and must be dismissed for multiple, alternative reasons.

      A.    Plaintiff Fails To Allege That Defendants RE&R Engaged In A Pattern Of Racketeering Activity.

          (1)    Plaintiff Fails To Allege That Defendants RE&R Committed Two Predicate Offenses Necessary To Constitute Racketeering Activity.

RICO authorizes civil suits by "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c)(1988).  Section 1962 contains four separate subsections, each addressing a different problem.  Plaintiff alleges violations of two of these subsections: § 1962(c), which prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct [ing] or participat[ing] . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity"; and § 1962(d), which prohibits any person from "conspir[ing] to violate any of the provisions of subsection (a), (b), or (c)."

A claim under § 1962(c) must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Pyramid Securities Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1117 (D.C. CIR.1991) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  Courts have defined "a pattern of racketeering activity" to mean the "commission of at least two predicate offenses on a specified list. 18 U.S.C. §§ 1961(1), (5) (1988 & Supp.1993)." Edmondson & Gallagher v. Alban

Towers Tenants Ass'n, 48 F.3d 1260, 1264 (D.D.C. 1995) (emphasis added).[5]  See also Western Associates Ltd. Partnership, ex rel. Ave. Associates Ltd., 235 F.3d 629, 633 (D.C. Cir. 2001) ("The RICO Act defines the term 'pattern of racketeering activity' as requiring the commission of at least two predicate racketeering offenses over a ten year period") (emphasis added).

Plaintiff's Complaint does not meet this standard.  Plaintiff hinges its RICO allegation on the sole predicate offense of "extortion." Complaint, at ¶ 30.   By failing to articulate two predicate acts in support of its RICO claim, Plaintiff fails to state a claim.

(2)    Plaintiff Fails to Allege Extortion Under Federal or State Law.

Beyond failing to delineate two predicate offenses, Plaintiff's claim of extortion is fatally deficient.  Section 1961(1) of the RICO statute defines "racketeering activity" by referring to state and federal criminal offenses.  Danielsen v. Burnside-Ott Aviation Training Center, Inc., 941 F.2d 1220, 1224 (D.D.C. 1991).  Under federal law, extortion is defined as inducing or attempting to induce someone to turn over money or property by wrongful use of actual or threatened force, violence or fear, or under color of law.  18 U.S.C. § 1951(a) and (b)(2).  Extortion under D.C. Code § 22-3251 is similarly defined.  Plaintiff's claim meet none of these criteria.

Plaintiff does not, for example, allege Defendants RE&R obtained or attempted to obtain any legal or equitable interest in the Otis Place Property by any means, much less actual or threatened force, violence, or economic injury.  The conduct ascribed to Defendants RE&R in Count One addresses Defendants RE&R's alleged violation of the

---

[5]  U.S.C. §§ 1961(1) and (5) were amended by PL 109-164 and January 10, 2006.  That amendment made no substantive changes to these provisions or others cited herein.

Conversion Act and the CPPA.  It discusses so-called conspiratorial plots on the part of these Defendants to kept the Otis Place Property "*out of the clutches of the tenants' right of first refusal law.*"  Complaint, at ¶ 16 (italics in original).  There is no well-pleaded fact that remotely suggests Defendants RE&R inflicted or threatened to inflict any force, violence, or economic injury.  Similarly, Count Two addresses Defendants' representation of the tenants association and the "fraudulent" conveyance of the Otis Place Property.  And in more than four pages of pleading, there is no mention of inflicted or threatened force or violence.

In short, Plaintiff's Complaint fails to allege any conduct on the part of RE&R rising to the level of extortion.

> (3)    Plaintiff's Claim of Extortion, If Any, Is Based Solely On Events That Transpired After The Otis Place Property Sale.

The infirmity of Plaintiff's claim for extortion is further underscored by the fact that all of the acts it attributes to Defendants RE&R transpired <u>after</u> the Otis Place Property was sold.

The Otis Place Property was sold in April 2005.  Complaint, at ¶ 15. Count Three ("Civil RICO – Extortion – All Defendants").[6]  Plaintiff seeks to rely on events occurring more than six months later.  Specifically, Plaintiff recounts that in November, 2005, Defendants RE&R purportedly "called tenants at their jobs and instructing them not to listen to Mr. Moreno, the rightful President of the Otis Place Tenants Association"' Complaint, at ¶ 30; poorly maintained the property, Complaint, at ¶ 31; dispatched a

---

[6]  Count Four ("Monetary Transactions in Illegal Proceeds (18 U.S.C. section 1957) — All Defendants"), and Count Five ("Conspiracy — All Defendants") are derivate RICO claims arising out of and dependent on Count Three.

representative to each apartment to review immigration documents "to further intimidate and try to diminish the tenants rights and force them to sign waivers and ask[] these Spanish speaking residents to sign possible proxy documents." Complaint, at ¶ 33.

Plaintiff's attempt to use these events to support a claim of extortive behavior reflects a fundamental misreading of the applicable law. Extortion implicates acts undertaken to wrongfully <u>obtain or attempt to obtain</u> the property of another. <u>United States v. Edwards</u>, 324 F.Supp.2d 10, 12 (D.D.C. 2004) (citing 18 U.S.C. 1951(a)). Acts alleged after the transfer of property inherently could not have caused the earlier transfer. All of Plaintiff's allegations under the heading of RICO-Extortion assert incidents occurring after the Otis Place property was transferred. Thus, Plaintiff's claim of extortion cannot lie and its claim under RICO fails.

        (4)    Plaintiff Has Failed To Allege That Defendants' Conduct Impacted <u>Interstate Commerce.</u>

Plaintiff's claim under RICO also suffers from its failure to allege that Defendants RE&R committed acts impacting interstate commerce. The interstate commerce requirement under RICO reflects the jurisdictional element necessary to establish that the statute was enacted pursuant to Congress's power to regulate commerce. <u>See</u> 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs. . . .").

To satisfy the interstate commerce provision requires only a demonstration that the underlying racketeering enterprise had at least <u>de</u> <u>minimis</u> affect on interstate

commerce.  See United States v. Juvenile Male, 118 F.3d 1344, 1347 (9th Cir. 1997)

("[A]ll that is required to establish federal jurisdiction in a RICO prosecution is a showing

that the individual predicate racketeering acts have a de minimis impact on interstate

commerce").

Here, Plaintiff fails not only to allege any impact Defendants RE&R's conduct

may have had on commerce across state lines but effectively denies such contact

exists.  Plaintiff identifies Defendant Eric Rome, as an attorney who "resides, is found,

has an agent or transacts his affairs in the District of Columbia." Complaint, at ¶10.

Defendant Eisen & Rome is similarly described as "a corporation engaged in legal work

in the District of Columbia." Complaint, at ¶ 11.   Plaintiff admits that the case involves

"two transactions, the sale of the Otis building to Lakritz Adler Management for One

million and seventy five thousand dollars [sic] ($1,075,000.00) in April 2005; and the

development contract by the new owners." Complaint, at 15.   The Otis Place Property

is located in the District of Columbia and Plaintiff purports to be the tenant association of

that property.  Complaint, at ¶ 1.

There is nothing in the Complaint remotely suggesting that any of the allegedly

fraudulent or extortive activity occurred beyond the boundaries of the District.  Taking

Plaintiff's allegations as true, the entire corpus of events triggering the filing of the

underlying Complaint took place exclusively in the District of Columbia.  Plaintiff pleads

no activities impacting interstate commerce and its claim under RICO must fail.

    (5)    Plaintiffs' Allegations Do Not Constitute a "Pattern" of Racketeering Activity Under RICO.

Finally, the acts alleged by Plaintiffs do not constitute a pattern of racketeering activity sufficient to sustain its claim under RICO. In Edmondson and Gallagher v. Alban Towers Tenants Association, 829 F. Supp. 420 (D.D.C. 1993), affirmed in part, vacated in part by Edmondson & Gallagher v. Alban Towers Tenants Ass'n., 48 F.3d 1260 (D.C. Cir. 1995), a case of compelling relevance here, a developer brought an action in RICO against a tenants' association, its president and legal counsel. The predicate acts underlying its RICO claim included "preventing the sale and rehabilitation of commercial real property worth over $16,000,000; attempting to defraud Georgetown by delivering a bad check; attempting to commit extortion by improperly clouding title to Alban Towers; using interstate commerce facilities for extortion; submitting fraudulent affidavits to the court; bribing witnesses and deliberately concealing materials sought to be discovered in a lawsuit." Id. at 424. In dismissing the case with prejudice the trial court found no pattern of racketeering, reasoning that, "what is alleged is a simple scheme, directed at a single victim, and resulting in a single distinct injury – namely, the alleged interference with the contractual rights of [a developer and a tenants' association]. This is insufficient to state a RICO claim." Id. at 425 (citations and footnotes omitted). The court made another important observation that speaks directly to Plaintiff's claim here: "It is a blatant misapplication of RICO's treble damages remedy to seek to reach ordinary commercial activities." Id.

On appeal, the D.C. Circuit concurred, holding: "Plaintiffs here have alleged only a single scheme -- to prevent of delay the sale of Alban Towers, or to secure a ransom

for allowing the sale to proceed.  Moreover, the scheme entails but a single discrete

injury, the loss of sale (or payment of the ransom), suffered by a small number of

victims . . . .  We think that the combination of these factors (single scheme, single

injury, and few victims) makes it virtually impossible for plaintiff to state a RICO claim."

Edmondson & Gallagher v. Alban Towers Tenants Association, 48 F.3d 1260, 1265

(D.C. Cir. 1995).

In sum, Congress enacted the RICO statute to remove organized crime from

legitimate business.  Plaintiff abuses this statute in a transparent attempt to federalize

its state claims.  Plaintiff's efforts should not be countenanced.  Plaintiff has failed to

assert the requisite two predicate acts; failed to state any instances of wrongful threat of

violence or economic injury; characterized conduct occurring after the Otis Place

Property was sold as "extortive"; failed to allege how Defendants' conduct impacted

interstate commerce; and failed to sufficiently assert a "pattern" of racketeering activity.

Defendants respectfully ask this Court to dismiss Counts Three for failure to state a

claim.  Defendants similarly ask this Court to dismiss Counts Four and Five which are

merely derivative claims of Count Three.

**V.     The Court Should Assert Pendent Jurisdiction Over The State
        Derived Claims**

Plaintiff's Complaint is comprised of three state law claims, namely, violation of

the Sale Act, violation of the CPPA and common-law fraud and one federal claim under

the RICO statute.  Should the Court dismiss the RICO count, Defendants RE&R

respectfully request that this Court decide the pendent state claims on the grounds that

the nature of Plaintiff's state claims are so inextricably intertwined with the federal

- 20 -

claims that the proper administration of justice demands resolution of the federal and state claims in one judicial proceeding.  Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C., 330 F.3d 523, 527 (D.C. Cir. 2003).

As described above, Plaintiff's RICO so-called "predicate acts" arise out of the sale and transfer of the Otis Place Property.  United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966), the Supreme Court held that  pendent jurisdiction "is a doctrine of discretion," that should be guided by "considerations of judicial economy, convenience and fairness to litigants."  In this instance, none of these would be offended by the exercise of pendent jurisdiction after dismissal of the federal claim.  To the contrary, judicial economy and convenience, state and federal, and a conscious regard for the ultimate interest of the litigants, counsel strongly in favor of retention.  Newport Limited v. Sears, Roebuck and Co., 941 F.2d 302, 307 (5th Cir.1991).  In light of the circumstances involved in this particular litigation Defendants RE&R urge this Court to assert pendent jurisdiction over the remaining state claims.

<u>CONCLUSION</u>

For all of the foregoing reasons, Defendants, Eric Rome, Esquire and Eisen & Rome, P.C., respectfully pray that their Motion To Dismiss will be granted.

Respectfully submitted,

JORDAN COYNE & SAVITS, L.L.P.

By:_____
    David P. Durbin  #928655
    1100 Connecticut Avenue, NW
    Suite 600
    Washington, DC  20036
    (202) 496-2804
    Fax:  (202) 496-2800
    E-mail:  d.durbin@jocs-law.com

Counsel for Defendants, Eric Rome, Esquire
and Eisen & Rome, P.C.