IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 809-811 Otis Place, N.W. DC [sic]<br>Tenant [sic] Association, Inc.[1]        )<br>          )<br>    Plaintiff,      )<br>          )<br>    v.          )<br>          )<br>Lakritz Adler Management, LLC, et al.  )<br>          )<br>    Defendants.    )<br>          ) | 1:05 CV 02465 (EGS) |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants, Lakritz Adler Management, LLC; Lakritz Adler Construction, LLC; Lakritz Adler Holdings, Inc.; Mr. Robb M. Lakritz; and Mr. Joshua Adler (collectively "Lakritz Adler") respectfully request this Court enter an Order dismissing the Complaint in accordance with Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

In support of this Motion, Defendants rely upon the attached Memorandum of Points and Authorities.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Paul J. Kiernan (DC Bar # 385627)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 663-7276
(202) 955-5564 – fax

Of Counsel:
Rafael E. Alfonzo (DC Bar # 385627)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006

---

[1] The legal name of the purported plaintiff to this action is 809-811 Otis Place, N.W. Tenants Association, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

809-811 Otis Place, N.W. DC [sic]          )
Tenant [sic] Association, Inc.[1]           )
                                            )
          Plaintiff,                        )
                                            )
     v.                                     )          1:05 CV 02465 (EGS)
                                            )
Lakritz Adler Management, LLC, et al.       )
                                            )
          Defendants.                       )
_____)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants, Lakritz Adler Management, LLC; Lakritz Adler Construction, LLC; Lakritz

Adler Holdings, Inc.; Mr. Robb M. Lakritz; and Mr. Joshua Adler (collectively "Lakritz Adler")

submit this Memorandum in Support of Their Motion to Dismiss and respectfully request this

Court enter an Order dismissing the Complaint in accordance with Federal Rule of Civil

Procedure 12(b)(1) and 12(b)(6).

## SUMMARY OF ARGUMENT

Plaintiff's Complaint should be dismissed because it fails to make any sense – literally.

Not only are the contents of the Complaint nearly incomprehensible and lacking any semblance

of legal research,[2] but Plaintiff's counsel *does not* represent the 809-811 Otis Place, N.W.

Tenants Association ("Tenants Association"), much less is she authorized to file an action on the

Tenants Association's behalf.    Indeed, the Tenants Association has demanded that Plaintiff's

counsel and her client cease and desist from representing themselves as acting on behalf of the

---

[1] The legal name of the purported plaintiff to this action is 809-811 Otis Place, N.W. Tenants Association, Inc.
[2] For instance, Plaintiff's Count IV purports to bring a private cause of action under the purely criminal money laundering statute, 18 U.S.C. § 1957.  Count I, as another example, purports to bring a breach of contract, but without alleging the existence of any contract.

Tenants Association. *See* Tenants Association Resolution dated December 22, 2005, attached as Exhibit 1.

Even if standing were not an issue (which it fatally, and perhaps fraudulently, is), this Court does not have the subject matter jurisdiction over what are at heart landlord-tenant local law matters. Each of the five counts alleged stems from alleged violation of statutory rights conferred by D.C. Code § 42-3404.02, the Tenant Opportunity to Purchase Act commonly known as the "TOPA," which grants housing tenants the right of first refusal upon an owner's desire to sell the property. The only federal jurisdiction nexus alleged is the civil RICO claim. But, that claim does not contain sufficient allegations of racketeering activity – much less a pattern of racketeering activity – necessary to sustain a RICO claim. Moreover, it appears that Plaintiff's counsel filed the RICO claim solely as a tactic and does not expect to prove a pattern a racketeering activity. *See* "Apartment Dispute Goes to Court," *Washington Examiner*, January 5, 2006, attached as Exhibit 2. Once the RICO-related counts are dismissed, the remaining local law counts should be dismissed for lack of subject matter jurisdiction.

Finally, under Rule 12(b)(6), the Complaint fails to state a claim upon which relief can be granted regarding each of the five counts alleged.

## STATEMENT OF FACTS

This case arises from a dispute between members of a tenants' association incorporated in the District of Columbia. A minority of members in the 809-811 Otis Place, NW, Tenants Association were dissatisfied with the terms of a redevelopment agreement concerning the underlying property that was executed between Lakritz Adler and the Tenants Association. This dissatisfaction led one tenant in particular, Augusto Moreno, to pursue efforts to derail the

agreement, including the filing of this *unauthorized* lawsuit purportedly on behalf of the Tenants Association.

On March 29, 2004, the tenants of the apartment complex located at 809-811 Otis Place, NW, Washington, D.C., formed the Tenants Association in response to a notice from the owner of the underlying property that it intended to sell the property to a developer.  *See* ¶ 3-4, Declaration of William Glover, President and Member of the Board of Directors of the Tenants Association ("Declaration") attached as Exhibit 3.  Under District law, before an owner may sell a housing accomodation, an owner must give the tenants an opportunity to form an association to purchase the property.  *See* D.C. Code § 42-3404.02.  The purpose of the Tenants Association was to negotiate a condominium conversion agreement with the owner/seller and the developer that would allow the developer to purchase the apartment complex in exchange for granting members of the Tenants Association an option to purchase condominiums in the resulting property.

The Tenants Association's officers discussed a possible deal with more than one potential developer and decided to proceed with Lakritz Adler.  *See* Complaint at ¶ 16 and Declaration at ¶ 25.  Subsequently, the Tenants Association's board of directors approved the development agreement negotiated between the Tenants Association and Lakritz Adler.  *Id*.

Briefly, the development agreement provides for the sale and demolition of the Otis Place apartment complex in exchange for the tenants retaining an option to purchase condominiums in the newly constructed building below market price.  Additionally, for tenants who exercise their option to purchase, the agreement also provides moving expenses and rental assistance during the construction period.  Those members of the Tenants Association who do not wish to purchase new condominiums will be paid a $15,000 move-out fee.

3

Mr. Moreno, the dissatisfied tenant, has led an effort to organize opposition to the development agreement by questioning the legitimacy of the Tenants Association's board and its decision-making and by hurling convoluted, defamatory statements about the intentions and business practices of Lakritz Adler. *See generally* Declaration and Complaint. This has culminated in Mr. Moreno's bizarre attempts to proclaim himself president of the Tenants Association and pursue this action without the consent of – and indeed contrary to the wishes of – the Tenants Association.

In an express effort to stop Mr. Moreno and his counsel from continuing to interfere with the development agreement, the Tenants Association adopted a resolution at its annual meeting specifically repudiating Mr. Moreno and his counsel and requesting that neither hold themselves out as a representative of the Tenants Association. *See* Exhibit 1. That same resolution, signed by more than half of the members of the Tenants Association, also specifically reaffirmed the development agreement between the Tenants Association and Lakritz Adler, which had been ratified by the Tenants Association on October 6, 2005. *Id.*

The Tenants Association's resolution was adopted on December 22, 2005, the day before this lawsuit was filed, and Plaintiff's counsel was informed of the Tenants Association's action. See Declaration at ¶ 18. Yet, Mr. Moreno and his counsel chose to file this action anyway. Similarly, prior to filing this Motion to Dismiss, undersigned counsel wrote to Plaintiff's counsel reminding her of the Tenants Association's resolution against her and her client, pointed out other deficiencies in the Complaint that are also detailed below, and requested that Plaintiff's counsel withdraw the Complaint. *See* Exhibit 4. Because Plaintiff declined to withdraw the suit, Lakritz Adler has proceeded with this Motion.[3]

---

[3] Additionally, Lakritz Adler intends to file motion in accordance with Rule 11 seeking sanctions against both Plaintiff and counsel for filing and maintaining this suit.

## ARGUMENT

I.  **Plaintiff's Complaint Should Be Dismissed in Accordance with Federal Rule 12(b)(1) For Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing.**

On a motion to dismiss pursuant to Rule 12(b)(1):

> the plaintiff bears the burden of establishing that the court has jurisdiction.  In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations.

*See Lockamy v. Truesdale*, 182 F.Supp.2d 26, 30-31 (D.D.C. 2001).  Moreover, the court need not limit itself to the allegations of the complaint.  Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case. *Id*.  In this case, Defendants respectfully request the Court consider attached Exhibits, which prove that this lawsuit is not authorized by the Tenants Association.

Under Article III of the Constitution, the federal courts only have jurisdiction to hear "[c]ases" and "[c]ontroversies." U.S. Const., art. III, § 2; Flast v. Cohen, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).  One component of this "case-or-controversy" requirement is that plaintiffs must have standing to sue – an inquiry that focuses on whether the plaintiff is the proper party to bring suit. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231.  Simply put, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright*, 468 U.S. 737, 750-751 (1984).

An analysis of standing focuses on the particular injury allegedly suffered by the plaintiff, and involves a three-part judicial inquiry:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of – the injury must

be fairly ⋯ trace[able] to the challenged action of the defendant, and not ⋯ th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted). In undertaking the first part of this analysis, the Court typically assumes that the named plaintiff actually believes it has been injured and has a desire to pursue the instant case. Here, however, the Tenants Association has specifically disassociated itself from the Plaintiff's counsel and from Mr. Moreno. *See* Exhibit 1. Contrary to the Complaint's allegations, the Tenants Association has specifically ratified the development agreement that is the subject of this suit. *Id.* Rather, it is Mr. Moreno that is behind this lawsuit.

Mr. Moreno – or any individual tenant – does not have standing to pursue claims arising from an alleged violation of the TOPA. "[I]f the conduct of an owner gives rise to any basis for a civil action against the owner under § 45-1653 [of TOPA], it is only the tenant organization that is 'aggrieved' as that term is used in § 45-1653 and, therefore, it is only the tenant organization that can bring a civil action against the owner under the statute." *See Stanton v. Gerstenfeld*, 582 A.2d 242, 245 (D.C. 1990) (holding that individual members of a tenants association do not have standing to bring claims under TOPA against the owner/seller of the underlying property). Thus, Mr. Moreno has no standing to pursue the claims he purports to have based on his rights under TOPA.

## II.    Plaintiff's Complaint Should Be Dismissed in Accordance with Federal Rule 12(b)(6) For Failure to State a Claim Upon Which Relief Can Be Granted.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint and, therefore, the court must treat factual allegations as true and draw all reasonable inferences in a plaintiff's favor. *See In re U.S. Office Products Securities Litigation*, 326 F.Supp.2d 68, 73-74

(D.D.C. 2004).   The Court, however, "need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations."  *Id.*  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. *See O'Hair v. United States*, 281 F. Supp. 815, 816 (D.D.C. 1968). In performing this task, the Court relies only on the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. *See Bradley v. Nat'l Assoc. of Secs. Dealers Dispute Resolution, Inc.*, 2003 WL 255966 (D.D.C. 2003).  While the Court construes the complaint in the light most favorable to the non-moving party, the Court must not accept as true allegations contradicted by exhibits attached to or incorporated in the pleading. *See, e.g., Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y 2002); *Ecash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1144 n.7 (C.D. Cal. 2001); Wright & Miller, 5A Fed. Prac. & Proc. Civ. 2d § 1357.  If, upon reviewing the complaint and exhibits, the Court determines that the plaintiff can prove no set of facts that would entitle him to relief, or that, as a matter of law, the complaint lacks a cognizable legal theory, then dismissal is proper. *See Systems Council EM-3 v. AT&T Corp.*, 159 F.3d 1376 (D.C. Cir. 1998).

Local law claims are the underlying reason for Plaintiff's suit in this matter; however, Plaintiff's RICO claims are the ones that bring defendants before this Court.   Therefore, defendants will first address the RICO claims to demonstrate that none of these claims should be before this Court.   Should the Court dismiss the RICO-related claims, the Court may also exercise its discretion and dismiss the pendent local law claims, as discussed below.

**A.      Plaintiff's Counts III, IV, and V Fail to State a Claim Under 18 U.S.C. § 1961 *et seq*. Upon Which Relief Can Be Granted and Should Be Dismissed.**

Counts III , IV, and V of the Complaint each allege a cause of action related to 18 U.S.C. § 1961, Civil RICO (or as Plaintiff puts it "CIVIL RICO EXTORTION") against all defendants. None of these three counts states any specifics supporting Plaintiff's allegations.  Moreover, Plaintiff ignores the primary purpose of RICO – to target organized crime.  *Edmondson and Gallagher v. Alban Towers Tenants Association,* 829 F. Supp. 420, 425 (D.D.C. 1993) *aff'd* 48 F.3d 1260 (D.C. Cir. 1995).  Here, it appears that Plaintiff's counsel filed the civil RICO claim more as a frivolous negotiating tactic rather than as a legitimate claim.  *See* Exhibit 2.

The Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, authorizes civil suits by any person injured in his business or property by reason of a violation of § 1962.  Section 1962, upon which Plaintiff relies prohibits a person employed by or associated with an enterprise effecting interstate commerce from conducting or participating ... in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" *See* 18 U.S.C. § 1962(c).  To establish a civil RICO violation under subsection (c), a plaintiff must prove four elements: 1) the conducting (2) of an enterprise affecting interstate commerce (3) through a pattern (4) of racketeering activity.  *See Pyramid Securities, Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1995)).  Regarding what constitutes a racketeering activity, RICO provides of list of qualifying crimes, including murder, kidnapping, drug dealing, arson, robbery, bribery, and extortion – clearly not the sort of activity contemplated by the Complaint.  *See* 18 U.S.C. § 1961(1)(A). Additionally, for a pattern of racketeering activity to exist, RICO requires two or more predicate acts within 10 years of each other.  *See* 18 U.S.C. § 1961(5); *see also Edmondson*, 48 F.3d at 1264.

Plaintiff fails to plead the requisite elements to maintain a civil RICO cause of action against the defendants. Plaintiff does not sufficiently plead a racketeering activity in accordance with the RICO statute. And, Plaintiff does not adequately demonstrate that the activities it alleges, even if true, constitute a pattern of racketeering activity within the meaning of the civil RICO statute. Therefore, Plaintiff's civil RICO claims must be dismissed.

1.    **Plaintiff fails to plead sufficiently any of the predicate acts that constitute a "racketeering activity" under 18 U.S.C. § 1961(1) necessary to sustain a civil RICO claim.**

In order to establish a claim under RICO, Plaintiff must prove that defendants engaged in racketeering activity as defined by and listed in the RICO statute. *See* 18 U.S.C. § 1961(1); *see also Edmondson*, 48 F.3d at 1264; *Pyramid Securities*, 924 F.2d at 1117. In an effort to satisfy this element, Plaintiff alleges that defendants attempted to, conspired to, or did extort money and property. *See* Complaint at ¶ 30. To support these claims, Plaintiff asserts that defendants pressured tenants to consent to sale of the property to LaKritz Adler by contacting them and instructing them not to listen to dissident Mr. Moreno (Complaint at ¶ 30), by failing to maintain the apartment complex (Complaint at ¶ 31), by threatening the immigration status of tenants (Complaint at ¶ 33), and by soliciting proxies from tenants. *Id.* Even assuming, for purposes of this motion, that the allegations of Count III-V are true, they do not meet the elements of extortion and therefore cannot be the predicate acts underlying a civil RICO claim.

As it relates to racketeering, extortion is defined by federal law as:

> … the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951(b)(2). Nothing in the Complaint suggests that actions that Plaintiff attributes to the defendants, even if true (which they are not), rose to the level of force or violence as described in the federal statute.

Moreover, the activities that Plaintiff pleads as extortionate occurred more than six months *after* the sale of the Otis Place property. Specifically, Plaintiff dates the defendants' allegedly coercive activities to on or about November 2005, while the Otis Place property was transferred in April 2005. *See* Complaint ¶¶ 30-33. Extortion involves acts undertaken to *obtain* wrongfully the property of another. *See United States v. Edwards*, 324 F.Supp.2d 10, 12 (D.D.C. 2004) (*citing* 18 U.S.C. § 1951(a)). Any acts undertaken after the fact could not support an extortion charge. In short, Plaintiff fails to allege any conduct on the part Lakritz Adler that rises to the level of extortion. As this is the only predicate conduct alleged by Plaintiff in support of his civil RICO claim, Plaintiff cannot meet the racketeering activity element, and his claim must be dismissed.

> **2.    Plaintiff's allegations do not demonstrate the pattern of racketeering activity necessary to sustain a civil RICO claim.**

Court decisions in this circuit illustrate that type of transaction underlying the instant case does not present the sort of "pattern of racketeering activity" necessary to maintain a civil RICO claim. Both this Court and the Court of Appeals for the District of Columbia Circuit have dismissed RICO claims stemming from the D.C. Rental Housing Conversion and Sale Act ("Sale Act"), the same statute relied upon by Plaintiff in the instant case. *See Edmondson*, 829 F. Supp. at 425 *aff'd* 48 F.3d 1260, 1265. In *Edmondson*, a developer who was frustrated in its attempt to purchase an apartment building brought a cause of action, including a RICO count, against a tenants association as well as the association's president and legal counsel. The developer alleged that the defendants engaged in an elaborate scheme of bribery and deceit, which was

intended to delay or prevent the sale of the apartments and to extort money from the plaintiff.

Plaintiff alleged that the scheme included fraud, extortion, submitting fraudulent affidavits,

bribing witnesses, and intentional concealment of material information.

In finding that the case did not present a pattern of racketeering and ordering that the

complaint be dismissed, the trial court stated as follows:

> The Court finds that, under the circumstances of this case, these alleged acts do not demonstrate a pattern of racketeering. Rather, what is alleged is a simple scheme, directed at a single victim, and resulting in a single distinct injury – namely, the alleged interference with the contractual rights of E&G vis-à-vis Georgetown. This is insufficient to state a RICO claim.
>
> Although RICO is an important law which has done much good to combat organized crime, too many private litigants have distorted the law in an effort to reach activities RICO never intended to address. It is a blatant misapplication of RICO's treble damages remedy to seek to reach ordinary commercial activities such as that alleged by E&G. As the Ninth Circuit has observed "RICO has intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.
>
>                               * * * *
>
> Based on the facts of this case, it is clear there is no basis for RICO claim... . Even if it could be established that the Defendants devised a "scheme," it would have been to accomplish one discrete goal, not a conspiracy in violation of RICO.

829 F. Supp. at 425 (Citations and footnotes omitted). On appeal, the D.C. Circuit affirmed and

stated as follows:

> Plaintiffs here have alleged only a single scheme – to prevent of delay the sale of Alban Towers, or to secure a ransom for allowing the sale to proceed. Moreover, the scheme entails but a single discrete injury, the loss of sale (or payment of the ransom), suffered by a small number of victims... . We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiff to state a RICO claim.

11

*Edmondson & Gallagher v. Alban Towers Tenants Association*, 48 F.3d 1260, 1265 (D.C. Cir. 1995). The D.C. Circuit subsequently affirmed its *Edmondson* analysis in the case of *Western Associates Limited Partnership v. Market Square Associates*, 344 U.S. App. D.C. 257, 235 F.3d 629 (D.C. Cir. 2001). In that case, a partnership ("Western") sued individuals and investors of a real estate firm alleging various accounting and business improprieties. The district court dismissed plaintiffs' RICO claim because Western had not demonstrated the requisite pattern of racketeering activity. The D.C. Circuit affirmed the decision of the District Court which relied on the *Edmondson* analysis.[4] In this regard, the court stated:

> [W]e do not understand the Supreme Court to disparage interpreting RICO's pattern requirement to guard "against finding continuity too easily in the context of a single dishonest undertaking involving mail or wire fraud." . . . . The pattern requirement thus helps to prevent ordinary business disputes from becoming viable RICO claims[.]

*Id.* at 636-37 (Citation omitted).

Similarly, in *Ganzi v. The Washington-Baltimore Regional 2012 Coalition*, 98 F. Supp. 2d 54 (D.D.C. 2000*)*, the district court dismissed a RICO claim that defendants improperly conspired to wrest control of an official bid to host the 2012 Olympic Games. The court found plaintiff failed to allege a pattern of racketeering activity and stated as follows:

> Under 18 U.S.C. § 1962(b), it is unlawful for any person "through a pattern of racketeering activity" to acquire control of, or an interest in, any enterprise engaged in interstate commerce. To establish a pattern, a Plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 106 L. Ed 2d 195, 109 S.Ct. 2893 (1989). If the alleged predicate criminal activity has ended, as argued here, a pattern may still be shown, but the Court must consider such factors as 1) the number of unlawful acts; 2) the length of time

---

[4] The Court of Appeals also rejected Western's attempt to claim that there were numerous victims because Western had many partners. The court determined that for the purposes of RICO pattern analysis, the partners should be viewed as a single victim. *Edmonson*, 235 F.3d at 635.

over which the acts were committed; 3) the similarity of the acts; 4) the number of victims; 5) the number of perpetrators; and 6) the character of the unlawful activity. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 310 U.S. App. D.C. 409, 48 F.3d 1260, 1265 (D.C. Cir. 1995).

The predicate acts in this case are alleged to be misrepresentations that induced Ms. Ganzi to disclose proprietary information to the Defendants, and additional acts that enabled the Defendants to supplant her as the official representative for the District of Columbia bid for the 2012 Olympics. The Defendants allege that at worst, this was a single scheme, over a relatively short amount of time, with only two victims and a single injury (Ms. Ganzi's loss of control of the official bid). They assert that such activity falls short of the requirements to prove a pattern under RICO. The Defendants are correct.

*Id.* at 57 (footnote omitted).

As applied to the instant case, Plaintiff has not, nor can it allege a pattern of racketeering activity.[5] Like *Edmondson*, this case presents a transaction implicating TOPA to which a party with an interest objected. It does not represent a "pattern of racketeering" under RICO. The RICO claim (Count Three) must, therefore, be dismissed with prejudice.[6]

### B.    Plaintiff's Count IV Purports To State a Civil Claim Under 18 U.S.C. § 1957, a Purely Criminal Statute, and Should Be Dismissed.

In Count IV, Plaintiff purports to bring a claim under 18 U.S.C. § 1957, a criminal money laundering statute. There is, however, no language in this statute creating a private cause of action. *See Thompson v. Kramer*, 1994 WL 725953 (E.D.Pa.). Rarely is there a private right of action under a criminal statute. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). Where

---

[5] The RICO claim suffers from other deficiencies such as insufficient duration of alleged activity, which independently provides a basis for dismissing the claim. *See, e.g., H.J. Inc v. Northwestern Bell Telephone Co.*, 42 U.S. 239, 242 (1989) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."); *Edmondson & Gallagher, supra, 48 F.3d at 1265; Ganzi v. the Washington-Baltimore Regional 2012 Coalition*, 98 F. Supp. 2d 54, 57-58 (D.D.C. 2000).

[6] Dismissal **with prejudice** under these circumstances is appropriate. *See Confederate Memorial Association, Inc. v. Hines*, 301 U.S. App. D.C. 395, 995 F.2d 295, 299 (D.C. Cir. 1993); *Ganzi v. The Washington-Baltimore Regional 2012 Coalition*, 98 F. Supp. 2d at 58.

such a right has been found, it is because "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975). But here, as in *Cort*, "there was no more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Id*. at 79- 80.

In *Cort v. Ash*, the Supreme Court identified four factors to be used in determining whether a private right of action should be implied from a statutory scheme: (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted, (2) whether there is any indication of legislative intent to create or deny a private right, (3) whether it would be consistent with the purposes of the underlying statutory scheme to create a private right, and (4) whether the cause of action is one traditionally relegated to state law. *Id*. at 78. Here none of these elements are met.

Plaintiff also refers to a potential civil RICO claim, when alleging the conduct underlying Count IV. For the same reasons mentioned above in Section II A, Plaintiff fails to state a claim for civil RICO. Thus, Count IV should be dismissed.

### C.    Count I Fails To State a Claim Upon Which Relief Can Be Granted.

Plaintiff fails to articulate any recognizable theory of liability in Count I. Plaintiff lists a number of unrelated and internally inconsistent facts and statutes all conglomerated under the title "Breach of Contract." But, Plaintiff does not state which contract defendants allegedly breached nor how any defendant allegedly breached whatever contract that is.

Then, despite entitling this Count "Breach of Contract," Plaintiff purports to bring his Count I claims under TOPA, D.C. Code § 42-3404.02 *et seq*. and the D.C. Consumer Protection Act, D.C. Code § 28-3901 *et seq*. neither of which relate to breach of contract actions. In reality, the D.C. Consumer Protection Act does not even provide for a private cause of action under the

14

circumstances pled in this case (*see Childs v. Purll*, 882 A.2d 227 (D.C. 2005)) – and, this is not the last time Plaintiff purports to pursue a private cause of action under a statute that provides none. *See* Complaint, Count IV, ¶¶ 37-40.

Plaintiff also alleges that defendants violated or circumvented the Tenants Association's rights under TOPA, but then does not plead sufficient facts to support the claim. *See* Complaint at ¶¶ 14 and 16. Indeed, TOPA will only support such a cause of action if "(1) the landlord fails to present the tenant with price or terms as favorable as those offered a third party; (2) landlord fails to contract with tenant on same price/terms within reasonable time period; (3) owner or tenant intentionally fails to comply with statute." *See West End Tenants Ass'n v. George Washington University*, 640 A.2d 718, 726 n. 13 (D.C. 1994). Plaintiff meets none of these elements here. Instead, Plaintiff notes that under TOPA, an owner of a housing accommodation must inform tenants of its intent to sell the property and give the tenants the first opportunity to purchase at a fair price. *See* Complaint at ¶ 15. Plaintiff admits that the tenants at Otis Place were notified of the intent to sell. *See* Complaint, Count I, ¶¶ 14-16. To be sure, the only reason the Tenants Association was formed was to negotiate the terms of a sale. *Id*. And, finally, the Tenants Association did contract with Lakritz Adler. Of course, it is clear that Mr. Moreno and his counsel were ultimately dissatisfied with the development agreement. But, they failed to – and cannot plead – that that development agreement was less favorable than anything offered to a third party. So, Plaintiff fails to articulate a theory of how defendants damaged it.

### D.    Count II Fails To State a Claim Upon Which Relief Can Be Granted.

In Count II, Plaintiff apparently contends that the sale of the Otis Place property and the attendant development agreement constituted fraud because 1) the term of the president of Tenants Association who signed the development agreement had expired, (*see* Complaint at ¶¶

20-21); and 2) the board of directors of the Tenants Association did not approve the development agreement (*see* Complaint at ¶¶ 22-23).

In order to prove fraud, a plaintiff must show 1) a false representation, 2) concerning a material fact, 3) made with knowledge of its falsity, 4) with the intent to deceive, and 5) action taken by the plaintiff in reliance upon the false representation, 5) which consequently results in provable damages.   *See Isen v. Calvert Corp.*, 379 F.2d 126, 129-130 (D.C. Cir. 1967). Moreover, the Federal Rule of Civil Procedure 9(b) requires that in "all averments of fraud  or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, the D.C. Circuit requires plaintiffs alleging fraud to "state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994).  These requirements provide defendants with sufficient information to respond to fraud allegations and "discourage the initiation of suits brought solely for their nuisance value, and safeguard potential defendants from frivolous accusations of moral turpitude." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981).

Plaintiff fails to plead any of the requisite fraud elements with the particularity required case law and the federal rules.  In fact, Plaintiff makes no particularlized allegations regarding purported false statements by Lakritz Adler (or any other defendant) to the Tenants Association (or anyone else).  Rather, Plaintiff relies on innuendo and his own misapprehensions of the law to plead his case.

For example, Plaintiff claims that Mr. William Glover, the President of the Tenants Association who executed the development agreement with Lakritz Adler, did not have authority to do so because his term had expired three months prior.  *See* Complaint at ¶¶ 9, 20, 21.  This

assertion demonstrates a fundamental misunderstanding of corporate law and governance. Even if Mr. Glover's term as President had expired, he would still have had the authority of president to bind the Tenants Association until new elections were held. Under Plaintiff's scenario, the Tenants Association would not have had officers for a period of months. This, however, is not the law. The D.C. Code requires that all non-profit corporations:

> ***shall*** consist of a president, a secretary, and a treasurer, and may include 1 or more vice-presidents and such other officers and assistant officers as may be deemed necessary, each of whom shall be elected or appointed at such time and in such manner and for such terms not exceeding 3 years as may be prescribed in the articles of incorporation or the bylaws.

D.C. Code § 29-301.24 (emphasis added). Moreover, corporate law statutes generally dictate that corporate officers continue to serve even after their terms expire until new elections are held. *See, e.g.*, 8 Del. Code 142(b). That is, a corporation cannot be without its officers. So, Plaintiff's admission that Mr. Glover was the President at least three months before he executed the development agreement with Lakritz Adler and that there were no elections intervening elections constitutes an admission that Mr. Glover was authorized to bind in the Lakritz Adler development agreement the Tenants Association as the Tenants Association's president. *See* Complaint at ¶¶ 9, 20, 21.

Plaintiff also contends that the development agreement between the Tenants Association and Lakritz Adler constitutes fraud because the Tenants Association's board of directors allegedly did not approve it. *See* Complaint at ¶¶ 22-23. The Tenants Association's resolution, however, which specifically ratified the development agreement with Lakrtiz Adler, gives lie to Plaintiff's second contention. *See* Exhibit 1. The resolution shows that more than half of the Tenants Association membership (10 of 19 members – though, Plaintiff alleges there are 20 eligible members – *see* Complaint at ¶ 1) support the development agreement with Lakritz Adler.

E.    **In the Alternative, If the Court Finds That Counts I and II Do State a Claim, Then This Court Should Not Exercise Its Pendent Jurisdiction and Should Dismiss Both Counts for lack of Subject Matter Jurisdiction in Accordance with Federal Rule of Civil Procedure 12(b)(1).**

Supplemental jurisdiction allows a plaintiff who has a jurisdictionally sufficient federal question claim to join, in the original complaint, related claims that otherwise are jurisdictionally defective. *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a). A plaintiff must present a sufficiently-substantial federal claim and "the plaintiff's federal and local law claims must 'derive from a common nucleus of operative fact' [that] would ordinarily be tried in a single proceeding." *Dimond v. District of Columbia*, 792 F.2d 179, 188 (D.C. Cir. 1986). Such jurisdiction is discretionary, *Women Prisoners of D.C. Dep't of Corrs. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996), and a district court may decline to exercise supplemental jurisdiction if, among other things, the local law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(2)-(3).

First, Plaintiff's federal claims are not sufficiently substantial to allow this case to remain in federal court. As discussed above, Plaintiff fails to muster the proper facts and elements to plead civil RICO in Counts III and V; and, there is no private federal claim authorized by the statute cited/pled in Count IV. Moreover, in this case, local-law issues predominate and form separate and distinct causes of action from the federal claims. D.C. District Courts consider questions of judicial economy in deciding whether to hear state-law claims in tandem with federal claims. *Murphy v. PriceWaterhouseCoopers, LLP*, 357 F.Supp.2d 230 (D.D.C. 2004).

18

For instance, Courts have exercised supplemental jurisdiction where they have had to consider the same analysis for both state and federal questions. *Murphy*, 357 F.Supp.2d at 257 (Court exercised supplemental jurisdiction where claims arose under both federal Age Discrimination in Employment Act and the D.C. Human Rights Act). Here, as discussed, all Plaintiff's claims arise from the dispute about tenant rights pursuant to TOPA surrounding the sale of the Otis Place apartment complex. Analyzing and resolving these claims would have nothing to do with the alleged civil RICO allegations.

Second, this Court should decline to exercise pendent jurisdiction over Counts I and II if and once it dismisses Counts III-V of the Complaint, the Plaintiff's purported federal question claims. In deciding whether to exercise their discretion to decline jurisdiction over state-law claims, D.C. District Courts take into account the stage to which the underlying litigation has progressed. *See Role Models America, Inc. v. Penmar Development Corp.*, 394 F.Supp.2d 121, 136 (D.D.C. 2005) (dismissing pendent claims, even though the parties had expended substantial time and effort litigating dispositive motions because case has not yet proceeded to discovery). Here, the investment of resources has not been so great as to render unfair a dismissal for want of supplemental jurisdiction at this stage of the proceedings. Moreover, D.C. District Courts believes it prudent for federal judges to refrain from deciding cases founded solely on state law when the litigants do not satisfy the prerequisites for diversity jurisdiction that Congress has established-absent a compelling countervailing justification. *Id.*; *see also Robinson v. District of Columbia*, 403 F.Supp.2d 39, 57 (D.D.C. 2005).

### III.    Conclusion

Not only do the claims that Plaintiff brings have no basis in fact or law, but it is apparent that Mr. Moreno and his counsel have not truly brought this case with the authority of the

Tenants Association.   Moreover, the manner in which this suit has been pled and publicized seems calculated more to embarrass the defendants rather than to satisfy a legitimate legal claim.

For the foregoing reasons, the Complaint should be dismissed.   Given the frivolous nature of the Complaint, defendants respectfully request that the Court award attorneys fees and costs and for any other relief the Court deems appropriate.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

Paul J. Kiernan (DC Bar # 385627)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 663-7276
(202) 955-5564 – fax

Of counsel:

Rafael E. Alfonzo (DC Bar # 478524)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 955-3000
(202) 955-5564 – fax

# 3551305_v1