## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **809-811 Otis Place, N.W.  D.C.** | * | **Civil #. 1:05CV02465** |
| **Tenant Association,** | * | **Jury Trial Demanded** |
| | * | |
| **Plaintiff** | * | |
| **v.** | * | **Honorable E. Sullivan** |
| **Lakritz Adler Management** | * | |
| **L.L.C., et al.,** | * | |
| **Defendants** | * | |

**********************************************************************

### PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS "LAKRITZ ADLER" AND DEFENDANTS ERIC ROME, AND EISEN AND ROME'S, MOTION TO DISMISS UNDER  Fed. R. Civ.P. 12 (b) 6 and 12 (b)(1)

Plaintiff, 809-811 Otis Place, N.W. D.C. Tenant Association, by and through their undersigned counsel, opposes Defendants' (Eric Rome, Esq. and Eisen and Rome, P.C.) and collectively "Lakritz Adlers" Motion to Dismiss pursuant to LCvR 7 and Fed. R. Civ. P. 12(b)(6) and 12 (b)(1).  Plaintiff contends that the complaint states a claim upon which relief can be granted regarding each of the five counts alleged.  In addition, Plaintiff claims that the Court has jurisdiction pursuant to section 1964 RICO, 18 U.S.C. Section 1964, and pursuant to its jurisdiction over all civil actions arising out of the Constitution, laws or treaties of the United states, 28 U.S.C. Section 1331.  Several courts have ruled that Federal courts have exclusive jurisdiction over RICO See **Morda v. Klein** 865 F2d 782 (6th Cir. 1989) and **Lou v. Belzberg**, 834 F2d 730 (9th Cir. 1987).

### INTRODUCTION AND SUMMARY ARGUMENT

Professor G. Robert Blakey the author of RICO cogently stated this principle:

*"Victims care little that their life savings are stolen by mobsters wearing black shirts and white ties or by accountants while dressed in Brooks Brother's suits and white*

*collars.  The statute was consciously written to apply equally to anyone who violated it; it was not to be read differently depending on who the plaintiff was and who as the defendant".  See "**RICO – The Act is neither Anti-business Nor Pro-Business, Its' Pro Victim**".  **Nat'l L.J., Aug. 25, 1985.***

Plaintiff's complaint is a highly particularized pleading numbering seventeen pages, asserting a mosaic of material crimes under the Racketeer Influenced and Corrupt Organizations Act (R.I.C.O.), and D.C. statutes.  Indeed, the complaint is unusually detailed and precise.   The word "racketeering" has certain implications in our society.  This term is the word used by Congress to describe the statute and it should not have anything to do with he Court's determination of whether the Defendants committed the acts in question.  In fact, the vast majority of cases brought under RICO have nothing to do with organized crime.  Plaintiff's complaint clearly meets the pleading standards of rules 8(a) and 9 (b) and is similar to many other complaints filed by plaintiff's counsel which have been upheld in this jurisdiction and other Districts.  Plaintiff's complaint describes the roles of each defendant in the alleged scheme as well as the time, place and manner of the statements, communications, material omissions, and acts at issue with sufficient particularity to enable defendants to prepare an adequate answer from the allegations.  This is all that is required in this Circuit.  Federal law provides the remedy through the anti-racketeering statute known as civil RICO.  It is specifically directed at certain types of illegal conduct, such as extortion, fraud, which constitutes the thrust of our case against the defendants.  There is a web of organizations –established by the defendants is used to conceal the nature and source of this money operation.  These organizations are seeking to evade the light of day and to conceal the illegal source of their funds, and their basic operations. This illegal conduct is about money.  It is all too

easy for the Court to look the other way.  The defendants have devised a scheme, hammering tenants for their homes, contrary to the protections afforded them under the D.C. law, threatening to punish those who decline to sign their *Notices to Quit*, and setting up a shadow structure or enterprise outside public view and our laws to make it all possible.

Defendant's Motion in contrast, is premised upon his distortions of the factual allegations of the complaint, and his misstatements of law and fact.  Defendants neatly ignore the pertinent standard.  Plaintiff's complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6) "*unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to* relief."  See **_Robertson v. Dean Witter Reynolds_**, **_Inc_**., 749 F 2d 530, 533-34 (9th Cir. 1984).

To the extent that Rule 9(b) pleading standards is applicable to Plaintiff's civil RICO and Fraud Claims, public policy mandates liberal application of such standards.  Although the Defendants fire away at the complaint, the Court should look to the legislative intent of "RICO" which was aimed at the destructive effect of organized criminal activity on our society, economy and our general welfare and not limited to our economic system.  The Supreme Court has stated clearly in **_Sedima, S.P.R.L. v. Imrex Co_**. 473 U.S. 479 (1985)

> **_"RICO is to be read broadly.  This is the lesson not only of congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes."_**

RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime.  RICO's liberal construction clause therefore mandates a liberal application of the pleading requirements of **Rules 8(a) and 9(b)** in this case.  Measured

under these standards, plaintiff's complaint is more than adequate because it sufficiently details the time, place and nature of the fraud, and other criminal predicates of their scheme in order to permit defendants to prepare an answer.  Plaintiff wishes to stress to the Court, as opposed to Defendant's arguments that the pleading requirements set forth in Rule 9 (b) **apply only to plaintiff's allegations of fraud** under the D.C. statutes, which would include their fraudulent conveyance of the property known as 809 -811 Otis Place, N.W. D.C. under the Sale Act, and the Development contract as well.

Contrary to Defendant's assertions, courts have held that although allegations of fraud based upon "*information and belief*" would not usually satisfy Rule 9(b), "an exception exists where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing.  See **Wool v. Tandem Computers** 818 F. 2d at 1439.  In such cases, the complaint will satisfy Rule 9(b) if the grounds upon which plaintiff's beliefs are founded are set forth in the pleading.  Plaintiff contends that the evidence is exclusively within the defendant's control and the plaintiffs have pled sufficient facts underlying their belief that fraud was committed.

Note the allegations concerning **extortion,** or the second RICO predicate Act of **conspiracy to commit extortion**, D.C. Code Section 22-3851. and 18 U.S. C. Section 1951- The RICO Act specifically allows the <u>conspiracy charge under extortion</u> to be a separate predicate act as opposed to some other crimes which do not allow the conspiracy charge to stand as a predicate act. The Court should note that the Defendants alleged a failure of Plaintiff's complaint to outline the second predicate offence.  Plaintiff has completed that requirement.   If the racketeering acts are not frauds, the general principles of pleading embodied in Rule 8 apply; See  **D. Smith & T. Reed, <u>Civil Rico</u>,** Section

7.02 (1), at 7-4 (1988). "Rule 9 (b) does not require any particularity in connection with and element of intent, knowledge, or condition of mind." They can be averred generally. See **Walling v. Beverly Enterprises, Inc**. 476 F 2d 393, 397 (9th Cir.1973). Intent is shown by examining the scheme itself.

It is difficult to understand defendant's inability to answer the complaint. Rule 9(b) does not mandate the pleading of detailed evidentiary matter. Further, Rule 9 (b) does not contradict the theory of notice pleading embraced by Rule 8 (a) which requires that all averments be simple, concise and direct". The Courts have stressed that the pleading requirements are relaxed in civil RICO and fraud cases alleging corporate fraud, especially in complex corporate fraud cases such as this one. The Court should be skeptical about the intent of Defendants failure to answer Plaintiff's detailed complaint. A careful examination of this Motion and its criticism of Plaintiff's complaint are not valid given the court precedents supporting allegations in this complaint. It is Defendant's Counsel who appears to have difficulty with the complexity of RICO and its applications.

Plaintiffs assert substantive and conspiracy claims under Section 1962 (a) (b) (c) and (d) of RICO, 18 U.S.C., 18 U.S.C. Section (a)-(d). Each element of those claims are well stated and defendant's challenges should be rejected

**Section 1962 (a)** is aimed at preventing the use of racketeering income in the operation of or investment in, and enterprise.
**Section 1962 (b)** targets acquisition or maintenance of an interest in or control of an enterprise.
**Section 1962 (c)** is aimed at conduct or participation in the affairs of an enterprise by persons employed by or associated with an enterprise.

*A claim under subsections (a) (b) or (c) however requires pleading the following elements which the Plaintiffs have successfully done.*

1. **The existence of a RICO "enterprise"**

Plaintiff has identified the RICO enterprise as an association in fact of each defendant. The statutory definition of enterprise is broad, see **18 U.S.C. Section 1961 (4).** They may include any group of individuals and or a corporation as in the instant case.  See **United States v. Turkette**, 452 U.S. at 580 **and U.S. v. Feldman** 837 F.2d at 362 a business venture composed of plaintiff investors, defendants and corporations was a proper Rico enterprise.  Defendant's criticism about Plaintiff's pleading of the enterprise is without merit as was recently recognized Rule 8 (c) permits plaintiffs to allege alternative enterprises.  See **In Re ZZZZ Best Securities** Litigation. The court should find that the association in fact comprised of the defendants is a viable RICO enterprise which fulfills the person/enterprise distinction.

2. **The existence of a pattern of racketeering activity**.

Section 1961 (1) of RICO defines racketing activity as any of certain chargeable (under specified state criminal laws, or indictable under specific federal criminal provision.  See 18 U.S.C. Sections 1961(1).  The definition includes each of the predicate acts alleged by plaintiff:  extortion, in violation of D.C. statute; (2) extortion, in violation of the Hobbs Act. Section 1951; conspiracy to commit extortion (separate predicate offence); fraud in violation of the D.C. statute; and title 18 Section 1957 – criminal derived property over $10,000; along with various D.C. statutes enumerated in the complaint and below. Plaintiff met the two predicate minimum and added more on to her claims.

## A. EXTORTION – PREDICATE ACT AND CONSPIRACY TO COMMIT EXTORTION SECOND PREDICATE ACT.

Plaintiff's asserts as predicate acts defendant's <u>extortion,</u> and <u>conspiracy to commit extortion</u>, in violation of the <u>Hobbs Act</u>, 18 U.S.C. Section 1951.  The Hobbs Act defines extortion as the "*obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.*" U.S.C. Section 1951(b)(2).   Extortion through threats of economic loss falls within the statute prohibitions.  **U.S. v. Stolfi**, 889 F. 2d 378 (2 Cir. 1989).   The courts have expanded the scope of fear under the Hobbs Act beyond a fear of bodily harm to include fear of economic loss, actual or prospective.  Coercion is wrongful when defendants had no legitimate claim to the property acquired through fear.  **U.S. v. Enmons**, 410 U.S. 396 (1973) upholding conviction because extortioner had no lawful claim to the property.  In the past, Courts have recognized that in extortion cases the use of fear may be "wrongful" even when no positive law bars the defendant's claim to the property.   In a commercial transaction, a defendant violates the Hobbs Act is he uses fear to induce additional payments are  against the best interest of the victim's business or contrary to the normal functioning of the business.  Citing Tigar, <u>The Hobbs Act and RICO in Takeover Litigation</u>, 2 Civ. RICO Rep. 2, 2-4 (1986). Plaintiffs have alleged each of these elements with particularity.

In order to prove extortion by fear of economic loss, the evidence must establish that the victim reasonable believed first that the defendant had the power to harm the victim and second that the defendant would exploit that power to the victim's detriment. See **Sutherland v. O'Malley**, 882 F 2d 1196 (7th Cir. 1989). In the case at bar in the complaint the Plaintiff's allege that Defendants committed extortion when they did the

following acts which are examples. There are others and through our lawsuit we will pursue them vigorously, and will bring still more to light.  To list a few as following:

I.  Right after LaKritz and Adler went through the settlement with Mr. Glover, their staff member, along with Spanish translator of their hired, went door to door in the apartment like, asking for immigration documents at the same time seeking their consent to <u>Notice to Quit</u> from the tenant. The Plaintiffs had every reason in the world to believe Defendants would and could harm her through this extortion.

II.  Visited one member of the Plaintiff on her job seeking her consent to the <u>Notice to Quit</u> the premises.

III. Called their relatives and tried to create a problem between member of the Plaintiff and her relative.  Member would be forced to sign <u>Notices to Quit under the pressure to Defendants</u>.

IV. Failed to properly maintain the building and cause safety and security hazards.

V.  Refused to recognize the legitimately elected and rightful Tenants Association headed by Mr. Moreno and used their own racketeering enterprise to maintain a dummy, or sham tenant organization of their own through coercion.

VI.  A nexus between the defendants and either the pattern of racketeering activity or the RICO enterprise.  Plaintiff charges that the enterprise in this case is made up on all the Defendants.  For purpose of the racketeering statute, an enterprise is a group of people associated together for the common purpose of engaging in a course of conduct. This group of people, in addition to having a common purpose, must have personnel who function as a continuing unit, and sufficient organization or structure that its members function and operate together in a coordinated manner in order to carry our the common

purpose alleged.  Essentially, the core of the enterprise has to be the same throughout.  In Plaintiff's complaint, they have identified the enterprise as a group of individuals, and corporations, characterized by a common purpose, securing real estate through criminal activity,  in an ongoing informal organization, by personnel who functioned as a continuing unit.  Plaintiff's complaint is sufficient in describing that an enterprise existed. The Plaintiff has clearly enunciated how the defendants were associated with or employed by the enterprise.  It is not required that the defendants have been employed by or associated with the enterprise for the entire time the enterprise existed.

It is required, however, that some time during the period indicated in the indictment, the defendant in question was employed or associated with the enterprise.  Plaintiff has met that minimal burden in the complaint. The Court should consider several factors in deciding whether the racketeering acts named in the complaint were sufficiently continuous to form a pattern of racketeering activity, including the <u>number and variety of racketeering acts of the defendants, the length of time over which they were committed, the number of  victims, the presence of separate schemes and the occurrence of district injuries to the victims</u>.  The Plaintiffs have met this burden in their complaint.

**4.  Resulting injury to plaintiff in his business or property. Plaintiff alleged all the elements of this in her complaint.**

### B.<u>FRAUD UNDER  D.C. CODE</u>

Both Defendants have deliberately cited the wrong D.C. Statute as to the Fraud criminal charge that was violated by Defendants.  This is not common law fraud.  It is spelled out in the D.C. Code and Plaintiff was referring to the fraud committed in the fraudulent conveyance of the Otis Place property the sale and the development contract.

Plaintiff alleges with particularity that Defendants have engaged in "fraud in the sale of property knows as 809-811 Otis Place N.W. D.C.  As set forth each element of these acts have been alleged.  Plaintiff set out with particularity the scheme to defraud. Plaintiff alleges in the complaint that it was a fraudulent conveyance of the Otis Place property to Lakriz Adler without the rightful consent of the Tenant Association, and covered up by co-defendant Mr. Glover. and the development contract with " Lakritz Adler" without the consent of the legitimate Tenant's Association headed by Mr. Moreno, Plaintiff.

Under **D.C. statute Section 22-3821** which states (a) for Fraud in the First degree – *A person commits the offense of fraud in the first degree if that person engages in a scheme or systematic course of conduct with intent to defraud or to obtain property of another by means false or fraudulent pretense, representation or promise and thereby obtains property of another or causes another to lose property*. The complaint outlines with particularity as to how this fraud was instigated and perpetrated by the Defendants and their enterprise as part of their continuing pattern of racketeering activity.

## C. BREACH OF CONTRACT

Count one clearly indicates the breach of contract provisions referring to the original Sale of the Otis building and the Development contract by the RICO enterprise. Lakriz Adler have stated that they don't know what contracts Plaintiffs were referring to which is self evident from the complaint.

## D. Criminal Derived Property over $10,0000 Title 18 U.S.C. section  1957 – third Predicate crime

On page 2 note 2 of the Lakritz Adler Memorandum in Support of his Motion to Dismiss he appears to castigate counsel for bringing Count IV purportedly under a

private cause of action. Plaintiff have raised Count IV under 18 U.S.C. Section 1957 as a

predicate crime earmarked under the RICO covered criminal provisions. See **U.S. v.**

**Ruedlinger D.Kan**. 1997, 976 F. Supp. 976. Money obtained by defendants following

act of fraud constituted "criminally derived proceeds "violating money laundering statute,

whether or not the underlying criminal activity was complete. In the instant case before

the Court the defendants in the enterprise met the essential elements of engaging in

transaction in criminally derived property since they knowingly engaged or attempted to

engage in monetary transactions involving criminally derived property with a value of

more than $10,000 – the Otis Building was bought for over one million dollars, and that

money was actually derived from specified criminal activity, including fraud in the

original sale of the building by defendants using their co-defendant,and co-conspirator,

Mr. Glover, and extortion to ensure the defendants development contract was approved

by their illegitimate tenant association.

### E. Sale Act, or TOTPS Tenant Opportunity to Purchase Act. -D.C. Code Title 42-2404.05

Plaintiff avers in the complaint that Defendants violated the Sale Act , as cited above.

Defendants violated Section (a) Bargaining in good faith – the Tenant and owner shall

bargain in good faith. Plaintiff's alleges there was an intentional failure of the owner to

comply with the provision of this subchapter of the D.C. Code. The Act applies to all

sales of rental property and not just to sales for purposes of demolition or discontinuance

of housing use. Tenants are not required to show they are financially capable of

purchasing the property or to form, tenant organization before suing for landlord's failure

to provide notice to intent to sell rental property. Act only requires tenants to form

organization after notice is given and financial capability to purchase is irrelevant to requirement of notice.  See **<u>Redmond v. Birkel</u>**, 797 F. Supp.36 .  Furthermore, factual issues concerning landlord's good faith in negotiating precluded summary judgment in action by tenant claiming violation of statutory rights of opportunity to purchase and first refusal.  **<u>Green v. Gibson</u>**, 613 A2d 361 (1992). Plaintiff has alleged in their complaint the intentional failure of the owner and the defendants to comply with the provisions of this sub-chapter.  The Racketeering enterprise scheme was initially operational during the initial notice to the tenant Plaintiffs of the sale of the Otis Building.

Plaintiffs have also properly invoked the provisions of the District of Columbia Consumer Protection Procedures Act which was designed to police trade practices arising out of consumer merchant relationships – such as the defendant's development contract.

### F. CONSPIRACY

Plaintiffs also contend that defendants conspired, in violation of **Section 1962 of RICO**, to violate subdivisions (a), (b), and (c) of Section 1962.  Plaintiff have alleged the existence of an agreement to commit a substantive violations of the RICO Act by conducting the affairs of the enterprise through a pattern of racketeering activity or an agreement to participate in predicate act.  See **<u>Lewis v. Sporck</u>**, 612 F. Supp. at 1324. The specific allegations in Plaintiff's complaint satisfy this requirement.  The particularity requirements of Rule 9 (b) do not apply to Section 1962 (d) conspiracy claims**.  See <u>Rose V. Bartle</u>**, 871 F. 2d at 366. Proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence ordinarily the acts and conduct of the alleged conspirators themselves. The gravamen of the conspiracy charge is that each defendant agreed to participate, directly or indirectly in the affairs of

the enterprise by committing two or more predicate crimes. Under RICO, one co-schemer is liable for the other co-schemers' predicate acts. Thus upon joining a fraudulent conspiracy, each defendant becomes liable for the prior conduct of the earlier conspirators, and remains liable for the subsequent conduct of the other conspirators. In the seminal case, **United States v. Elliott**, 571 F2d 880 (5th Cir. 1978) the Fifth Circuit explained the then new concept of RICO conspiracy. That the many defendants and predicate crimes were different, or even unrelated was now irrelevant so long as it would be reasonable inferred that each crime was intended to further the enterprise.

**Resulting injury to plaintiff in his business or property**.

Plaintiff has lost their right to their homes under the Defendant's racketeering scheme. Defendants also ignore the allegations of the complaint and its clear inferences that defendants used the monies unlawfully obtained through their racketeering activity to continue their unlawful activities. These allegations are sufficient to satisfy the investment injury requirement. The purpose of this suite is to seek redress for the continuing injury done to the Plaintiffs by these acts. Plaintiff has been injured, continues to be injured and wishes to bring about trough federal court order, an immediate stop to the illegal activities and the collection of the damages provided under statute for the injury already suffered.

## G. EFFECT ON INTERSTATE COMMERCE

Defendants wrongly a state that just because the plaintiff and the Defendant live in D.C. that interstate commerce is not affected. Only the enterprise must have a connection with interstate commerce. It is also sufficient if the pattern of racketeering activity has an effect on interstate commerce. In **U.S. v. Romer**, 703 F 2d 805, 806 n.1 (5th Cir. 1983)

the defendants need only have had a reasonable basis to foresee that his actions would involve interstate commerce. If either the enterprise itself or the racketeering activities of those associated with the enterprise, affect interstate or foreign commerce, this is sufficient to satisfy this element.  Things like interstate phone calls, banking transactions, rental of equipment out of state; subcontractors etc. would be enough to qualify. Therefore, if the jury finds that any of the acts charged were actually committed, and also find that at least one of these acts was an act of the enterprise and that this act affected interstate commerce, this is sufficient to satisfy this element.  **See __Modern Federal Jury Instructions__**, and **__United States v. Bagnariol__**, 665 F2d 877 (9th Cir. 1981), cert denied, 456 U.S. 962 (1982).

## H. D,C, PRECEDENTS ON RICO

In the past, the District of Columbia Circuit, has ruled on some interesting RICO cases including, **__International Telecommunications Satellite of. V. Colino__**, 1992 U.S. Dist. Lexis 4887, 15 RICO L Rptr 920 (DDC April 14, 1992) where numerous frauds occurring over a three year period, which were perpetrated as part of six related schemes directed at a single victim,  was held sufficient to allege a pattern.  The Court also upheld a RICO claim in **__Federal Information Sys Corp. v. Boyd__**, 753 F. Supp 971, 976 (DDC 1990) upholding civil RICO claim where plaintiff alleged  that defendants defrauded a nonprofit corporation devoted to animal rights advocacy, thereby obtaining money for improper purposes; the court noted that the continuity element was met because "*the events took place over a number of years, and threatens to extend into the future, and there are a number of victims of and methods to defendants' predicate acts*" as in the case at bar.

Although the D.C. Court has ruled on at least one real estate RICO case, in

**Edmondson and Gallagher v. Alban Towers Tenants Association** 48 F3d 1260 (D.C.

Cir. 1995).  This case revolved around a returned check that the Tenant's association

tendered to delay the sale and does not remotely resemble the fact pattern of the

Plaintiff's claims against the defendants in the instant case.   It is not on point or relevant

to the case at bar because it inflicted only one single distinct injury upon a small number

of victims (three) and therefore was held insufficient. As opposed to Plaintiff's case

which is out of the reach of "ordinary commercial activities" through defendants multiple

injuries to a multitude of tenants over a two year period, with ongoing criminal behaviors

threatening tenants.  However, in that decision, the D.C. Court did look closely at another

case more on point to our fact pattern, in the Second Circuit's decision in **Beauford v.**

**Helmsley**, 865 F2d 1386 (2d Cir. (en banc)  (1989) Here the Court presents a similar

single scheme case in which the court found a pattern of racketeering.  **Beauford** also

involved a single scheme and a proposed conversion of apartments into condominiums,

but there the similarity to the **Edmondson and Gallagher** case stops according to the

Court. In **Beauford,** defendants committed fraud by separate mailings to apartment

buildings. With forty percent of the apartments unsold, there was a reason to believe that

more fraud would follow. Our Plaintiffs in the legitimate tenants Association, have

refused to sell and cave to the fraudulent acts of the defendants in the enterprise. There

remains a continuing threat of additional criminal activity and threats towards the

remaining tenants as Plaintiffs to this action.  Counsel has received additional reports

from tenants as recent as this week reporting such activities.   In this case, the Plaintiffs

have reason to expect that these defendants, together or separately will again engage in

RICO violating conduct. In the instant case, the alleged scheme lasted two years, cost the multiple of victim's money every month, and threatened to continue indefinitely, thus satisfying both closed and open ended continuity.

In **Pyramid Securities, Ltd v IB Resolution, Inc**. 924 F 2d 1114 (DC Cir. 1991) where an investor brought a civil RICO action against a bank arising out of the alleged wrongful conduct of its subsidiary, which performed bookkeeping functions for the investor in connection with a broker's alleged churning of the investor's account. The D.C. Circuit affirmed the district court's dismissal of the RICO claim on the ground that the investor had failed to satisfy the continuity prong of the Northwestern Bell pattern analysis. See **H.J.Inc.** v. **Northwestern Bell Telephone Co**, 109 S. Ct. 2893 (1989). The Court stated that "*far more than a hypothetical possibility of further predicate acts" was required to demonstrate open-ended continuity.*

## I. ATTORNEY ROME AND EISEN AND ROME'S LEGAL ISSUES

Defendant Eric Rome and his law firm of Eisen and Rome, P.C. law contend that because they are lawyers they cannot be part of the criminal enterprise or racketeering activities or be sued under the D.C. statutes. Plaintiff contends that this is not the case under RICO. See **Mathon v. Marine Midland Bank,** 875 F. Supp 986, 995 (EDNY 1995), which stated that attorneys who were alleged to have participated in the alleged fraudulent scheme and not merely provided traditional legal services were potentially liable under Section 1962 (c). Since the Supreme Court's decision in **Arthur Young and Co. v. Reves,** 113 S. Ct. 1163 (1993) the District Courts have concluded that it does not alter the nature of RICO to such an extent as to warrant an implicit reversal of previous precedents recognizing aiding and abetting liability under RICO. See also **Rolo v. City**

**Investing Co. Liquidating Trust**, 845 F. Supp 182 (DNJ 1993) which recognizes that defendants both aided and abetted commission of at least two predicate acts and participated in operation or management of the enterprise they are liable.  In the instant case, Mr. Eric Rome and his law firm did just that as it is spelled out in the complaint. Just because he is a lawyer, he and his law firm can still be deemed part of the enterprise of racketeering activity. In some situations, the perpetrators of a broad fraudulent scheme might be said to actually control the enterprise, though they are committing the fraud from the outside rather than the inside.  The complaint supports a finding that Defendants, Eric Rome, Esq. and Eisner and Rome P.C. his law firm, are properly named as defendants and co-conspirators in the racketeering enterprise.  The complaint correctly names these two defendants on all counts.

Plaintiff contends that the evidence is sufficient to support a finding that defendant Rome and his law firm, Eisen and Rome, P.C exerted control over the enterprise, through fraud, material misrepresentations and extortion of the tenants, and other methods of inducement.  A reasonable jury could conclude that these Defendants took part in directing some aspect of the enterprise's affairs, the defendants' actions could be found to have satisfied the "operation or management test".  The record shows that we have two defendants here a lawyer and his law firm, who undeniably is employed by  and operates or manages the enterprise within the meaning of **Reves**  because an additional reason supporting the fact that the affairs of the enterprise were conducted through a pattern of racketeering activity, is the fact that the case shows that Defendant Rome and his law firm office placed him in a position to perform the discrete, corrupt, acts  of which make up the RICO predicate act offenses. These two defendants received numerous warnings

from Mr. Moreno, the rightful President of the Tenant Association, concerning RICO

defendants' fraudulent tactics, and continuing to allow, if not actively encouraging its

continuation.

Attorney Rome was handed a petition for impeachment of Mr. Glover as President,

his co-defendant and co-conspirator of the Tenant's Association and refused to accept the

document from the tenants and other documents that revealed the new President was in

fact Mr. Moreno.  By his reckless disregard for the truth as to the legitimate Tenant

Association; his financial accommodation to the Buyer Defendants while representing the

Tenant's Association, and his attempt to cover up the gross violations of the Sale Act

which participating as a member of the RICO enterprise allows him to be treated similarly

to all the other named defendants as opposed to labeling him simply as an attorney.  Who

did Mr. Rome represent? It was certainly not the legitimate Tenant's Association headed

by Mr. Moreno which was formerly headed by his co-defendant, Mr. Glover.  These are

issues of fact that should be left for the jury to decide on the merits of the case.  The

complaint on its face is sufficient as to Mr. Rome and his law firm's involvement in the

enterprise.

### J.  ATTACHMENT OBJECTION ON AUTHENTICATION ONLY

**OBJECTION** to Lakritz Adler Attachments in their Motion to Dismiss under the Rule

for 12 (b) (6) Motions.  Plaintiff's Counsel and her clients have examined these

documents from the December 22, 2005 meeting of the sham, putative, Tenant's

Association led by Mr. Glover.  Once again upon examination of this claim Plaintiff's

have found a signature on the document whereby the signer has alleged a forgery of his

signature.  For the limited purpose of disqualifying this document for the Court's

consideration, Counsel has attached this person's affidavit on the proper admissibility of

Defendant Lakritz Adler's attachments.  Again, Plaintiff's stress the open ended

continuity of their case based on continued criminal activity.  See Exhibit  A – not on the

merits for authentication purposes only. In some instances, the Courts may even properly

consider case specific documents that are not attached to the complaint. However, the

court permits the Rule 12(b)(6) consideration of "undisputably authentic documents" so

long as the authenticity of the documents is not challenged, the documents are attached to

the Motion to Dismiss, and Plaintiff's claims are premised upon the documents.  Here,

Plaintiff's claims are not premised upon these questionable documents. If the court

considers this attachment it should be considered as **extrinsic** materials.  Merely,

submitting the documents would not trigger a conversion.

The Plaintiff agrees with Defendants that the federal court should exercise.

Jurisdiction over Plaintiffs Pendent Claims

## K. PUBLIC POLICY DICTATES THAT THE COURT ADDRESS PLAINTIFF'S CONCERNS.

The favorable regulatory climate to which Defendants were able to act with impunity

is over.  The best disinfectant will be a shining light, aptly stated by Justice Brandeis, on

such actions.  The Defendants attorney, Mr. Luchs bragged about his legal loophole

abilities under the Sale Act.  Between the summer of 1999 and the summer of 2004, the

DCRA issued at least 85 letters exempting a sale of property from the tenant purchase

requirement. Attorney Luch's  99.99/00.01 sale became famous for at least 20 of them.

Defendants' *flaw in the law defense* is that these defendants have helped shape D.C.

housing policy.  Based upon an obscure provision of D.C. Law, **Section 501(f)** of the

**housing code** allowed a landlord to clear out a building for substantial repairs if those repairs can't be made safely with tenants still in the building.  Safeguards were written in the law that guarantee tenants an absolute right to return to the building once repairs are don and to do so at the same rent.  In practice, the provision is rarely used as intended. However, it does make financial sense to empty a building and make the improvements without letting the original tenants back into the building. They just convert it to condos. Defendants tried to misuse of 501(f) and let the Otis building run down so that they can claim they needed substantial work. Not only to the tenants get evicted, but they are forced to live in substandard housing.  These practices were augmented by specific criminal violations of the law to ensure the goals of their criminal racketeering enterprise of money making at any price.  A good CIVIL RICO lawyer is one who can identify the criminal predicate acts which she knows will never be prosecuted on the criminal side of the Court because of the limited resources of our government.  CIVIL RICO cases in this area of the law – real estate abuse -can do a lot to protect innocent clients like the Plaintiffs who cannot afford to fight the system.  This Court has an opportunity to show the tenants in D.C. that their rights will be protected in the Federal District Court.

## **<u>CONCLUSION</u>**

The facts adduced and piled high against the defendants are that some  twenty-two (22) tenants were cheated out of millions of dollars in a scheme that spread itself out over two years are daming.   Subtle RICO analysis is not necessary.   Defendants' fraud, extortion, and other criminal violations cited above, strung together by the "**<u>making money at the expense of the tenants' rights</u>**" objective realized by the Defendants are enough. Defendants conduct easily surpassed the RICO threshold.

**THREREFORE**, for the foregoing reasons, defendants' motion to dismiss must be

**denied.**

Respectfully submitted,


  /s/ _____

B. Marian Chou, D.C.Bar No. #433279
800 7th St.  N.W. Suite 201
Phone (202) 783-2794
Fax (202) 898-1995
bmchou@mindspring.com

### Certificate of Service

I hereby certify that I have sent a copy of the foregoing Opposition to both defendants' attorney via e-mail at Rafael.alfonzo@hklaw.com and Mr. Durbin at d.durbin@jocs-law.com on March 5, 2006 and a hard copy to Mr. Bill Glover at his residence on March 6, 2006 via first-class mail.


B. Marian Chou /s/

### Declaration by Lya Toledo

I, Lya Toledo, resident at 809 Otis Place, NW, Apt. 2, Washington, DC 20010 hereby declare and confirm that:

1. I am a Peruvian citizen and a legal resident of the United States. I am 73 years old and I live alone in apartment Number 2 at 809 Otis Place, NW, Washington DC.

2. Shortly after the sale of the 809 Otis Place, NW building to Mr. Robb Lakritz and Mr. Joshua Adler, in April 2005 Mr. Andrew Leverman, the property manager, made some visits to my apartment, accompanied by a female Hispanic employee. During one of these visits Mr. Leverman, by way of the Spanish-speaking employee, offered to give me $500.00 at that point in time and $2,000.00 upon moving out of my apartment if I signed a document, which I refused to sign.

3. Furthermore they offered me the address of an apartment where I could move; under this pretext the Hispanic employee asked to see my proof of legal residence (Green Card), telling me that they needed it in order to fill out the paperwork to lease the apartment that they were offering to me. I offered to obtain a copy of my Green Card for them but they insisted in physically seeing my immigration documents. For this reason I submitted a formal complaint of discrimination and harassment before the Civil Rights Commission, which is still pending. The person in charge of the case is Ms. Julia Sarmiento, (202) 645-5630.

### Declaración de Lya Toledo

Yo, Lya Toledo, residente del 809 Otis Place, NW., Apt 2, Washington, DC 20010 declaro y confirmo que:

1. Soy ciudadana peruana, residente legal de Estados Unidos, tengo 73 años y vivo sola en el apartamento No 2 de 809 Otis Place, NW, Washington, DC.

2. Poco después de la venta del edificio 809 Otis Place, NW a los Srs Robb Lakritz y Joshua Adler, se sucedieron en Abril del 2005 visitas por parte del Sr Andrew Leverman, gerente de la propiedad acompañado de una empleada hispana a mi apartamento. En una de estas visitas el Sr Leverman a través de esta empleada que hablaba español, me ofreció darme $500.00 dólares en ese momento y luego $2,000.00 al abandonar mi apartamento, si yo les firmaba un documento a lo cual me negué a firmar.

3. Además de esto me ofrecieron la dirección de un apartamento para que yo me mudara, con este pretexto esta empleada hispana me pidió mi documento de residencia legal: Green Card, diciéndome que lo necesitaban para llenar los papeles de arriendo del apartamento que ellos me ofrecían. Yo les ofrecí conseguirles una copia del mismo pero ellos insistieron en ver el documento de

migratorio físicamente. Por esta razón es que yo inicié una queja formal ante la Comisión de Derechos Civiles por discriminación y maltrato en la vivienda que aún está pendiente y la persona encargada del caso es la Sra Julia Sarmiento: (202) 645-5630.

Sworn to be true to the best of my knowledge
Juro ser cierto a lo mejor de mi conocimiento

_Lya Toledo_        _2/24/2006_
Lya Toledo            Fecha/Date

District of Columbia: SS

Subscribed and Sworn to before me this ___ day of _____ 20__

Notary Public, D.C.
My Commission Expires November 30, 2006  Dec. 14, 2010

_AMM_        _12/24/06_
Notario/Notary        Fecha/Date

LEDC provided support in the translation of this document. LEDC is a nonprofit organization and receives funding from the DC Department of Housing and Community Development (DHCD).

### Declaration by Jose D Flores

I, Jose D. Flores, resident at 809 Otis Place,NW.,#24,Washington,DC 20010 Hereby declare and confirm that:

1. I did not attend the December 22,2005 meeting at 809-811 Otis Place, N.W., Washington, D.C. 20010.

2. I have never seen or signed any document from or about the December 22,2005 meeting resolution.

3. I review a copy of the ballot from December 22,2005, *see Exhibit 1*, I did not recognize the signature as my signature. I never signed any document or any ballot and/or meeting resolution.

### Declaracion de Jose D Flores

Yo,Jose D Flores,residente del 809 Otis Place,NW.,#24,Washington,DC 20010 aqui declaro y confirmo que:

1. Yo no asisti a la reunion de Diciembre 22,2005 en el 809-811 Otis Place, N.W., Washington, D.C. 20010.

2. Yo nunca vi o firme ningun documento de/o acerca la resolucion de la reunion del 22 de Diciembre,2005.

3. He revisado una copia de una balota de Diciembre 22,2005.*Ver Exhibicion 1*, no reconoci la firma como mi firma.Yo nunca firme ningun documento en ninguna balota y/o resolucion de reunion.

_Jose D. Flores_                    _02/14/06_
Jose D. Flores                     Date/Fecha

Sworn to be true to the best of my knowledge
Juro ser cierto a lo mejor de mi conocimiento

District of Columbia: SS

Subscribed and Sworn to before me this 14 day of Feb 20 06

Notary Public, D.C

My Commission Expires November 30, 2005 DEC 14, 2010

_Notary/Notario_                    _02/14/06_
Notary/Notario                     Date/Fecha