IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| 809-811 Otis Place, N.W. DC [sic] Tenant [sic] Association, Inc.[1] ) ) ) Plaintiff, ) ) v. ) ) Lakritz Adler Management, LLC, et al. ) ) Defendants. ) ) | | 1:05 CV 02465 (EGS) |

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

Defendants, Lakritz Adler Management, LLC; Lakritz Adler Construction, LLC; Lakritz Adler Holdings, Inc.; Mr. Robb M. Lakritz; and Mr. Joshua Adler (collectively "Lakritz Adler") respectfully request this Court Enter an Order imposing sanctions on B. Marian Chou, Esq., Plaintiff's counsel in the above-captioned case, as permitted by Rule 11 of the Federal Rules of Civil Procedure and in accordance with the Court's inherent power to sanction. In support of their Motion, Defendants state as follows:

### INTRODUCTION

This case involves the very conduct that Rule 11 was designed to deter: the filing of pleadings that are not well grounded in fact or warranted by existing law. *See* Fed. R. Civ. P. 11. Plaintiff, in an attempt to stall a real estate development project that he opposes, filed a number of frivolous claims for the purpose of clouding legal title to the property subject to development. In addition to baseless local law claims, Plaintiff invented two federal RICO claims and a money

---

[1] The legal name of the purported plaintiff to this action is 809-811 Otis Place, N.W. Tenants Association, Inc.

laundering "claim" in order to raise the matter into federal jurisdiction and to create negative media publicity for the Defendants.

Plaintiff and his counsel knew (or should have known) that their RICO and other claims were baseless, particularly after Defendants outlined the factual and legal deficiencies as required under Rule 11. See Defendants' letter to Plaintiff dated February 2, 2006, attached as Exhibit 1. Despite this, Plaintiff and his counsel continued to pursue their claims and in the process threatened the survival of a multi-million dollar development and very financial health of the Defendants. For this abuse of the judicial process, Defendants respectfully request this Court impose sanctions both on the Plaintiff and his counsel.

## BACKGROUND

This case arises from a dispute between members of a tenants' association incorporated in the District of Columbia. A minority of members in the 809-811 Otis Place, NW, Tenants Association ("Tenants Association") were dissatisfied with the terms of a redevelopment agreement concerning the underlying property that the Tenants Association executed with Lakritz Adler. This dissatisfaction led one tenant in particular, Augusto Moreno, to pursue efforts to derail the agreement by questioning the legitimacy of the Tenants Association's board and its decision-making and by hurling convoluted, defamatory statements about the intentions and business practices of Lakritz Adler. Mr. Moreno's efforts culminated in the formation of a competing tenants' association and the filing of the above-captioned lawsuit on its behalf alleging local and federal law violations, including RICO and money laundering statutes.

Plaintiff's lawsuit contained baseless (and indeed nonsensical) claims that served only to threaten the Otis Place development project and the Defendant's financial well-being. Upon Defendant's motion, this Court quickly dismissed Plaintiff's federal claims with prejudice for

lacking any merit and dismissed Plaintiff's local law claims by declining to exercise pendant jurisdiction. And, although the Court declined to reach the merits of the Plaintiff's local claims, the Court acknowledged doubt regarding Mr. Moreno's standing to represent the Tenant's Association.[2]

Even a cursory examination of the federal statutes and case law regarding the claims Plaintiff made would have revealed to Plaintiff and his counsel that they had no basis for making any the federal claims. For instance, the law is clear that there is *no* private cause of action for money laundering under 18 U.S.C. § 1957. Yet, Plaintiff brought that very claim and insisted on maintaining it despite being informed by defendant of the applicable law. *See* Exhibit 1.

Similarly, Plaintiff insisted on maintaining his RICO claims despite being shown that his claims did not contain sufficient allegations of racketeering activity – much less a pattern of racketeering activity – necessary to sustain a RICO claim. *Id.* Unfortunately, it appears that Plaintiff's counsel filed the RICO claim solely as a tactic and did not expect (or even understand or care how) to prove a pattern a racketeering activity. *See* "Apartment Dispute Goes to Court," *Washington Examiner*, January 5, 2006, attached as Exhibit 2.

## LEGAL ARGUMENT

### I. Rule 11 Requires Reasonable Pre-Filing Inquiry Into Both Facts and Law.

Rule 11 expressly authorizes sanctions for groundless complaints when it states that if "a pleading, motion or other paper is signed in violation of this rule, the court ... ***shall*** impose upon the party who signed it, a represented party, or both, an appropriate sanction." Fed.R.Civ.P. 11 (emphasis added); *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (affirming sanctions against law firm for filing of frivolous antitrust complaint). The Court's power to impose such

---

[2] The Court referred to the Plaintiff as, "Plaintiff, allegedly known as 809-811 Otis Place, N.W. D.C. Tenant Association." *See* Order dated March 21, 2006.

3

sanctions "guard[s] against abuses of the judicial process." *Shepherd v. Am. Board. Co.*, 62 F.3d 1469, 1472 (D.C.Cir.1995). In this regard, Rule 11 serves the purpose of protecting the court from "frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C.2002) (*quoting Cobell v. Norton*, 157 F.Supp.2d 82, 86 n. 8 (D.D.C.2001)).

The D.C. Circuit has held that once the district court finds that a pleading is 1) not well grounded in fact; 2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; or 3) is interposed for any improper purpose, "Rule 11 *requires* that sanctions of some sort be imposed." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174-75 (D.C.Cir.1985) (emphasis added); *see also Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 44 (D.C.Cir.1990); *Saltany v. Reagan*, 886 F.2d 438, 439 (D.C.Cir.1989), *cert. denied*, 495 U.S. 932 (1990); *Weil v. Markowitz*, 829 F.2d 166, 171 (D.C.Cir.1987).

The court must apply "an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises*, 498 U.S. 533, 554 (1991). Although Rule 11 does not require that a signer be correct in their legal theories and factual assertions, it does require that the signer reasonably inquire, research and investigate the facts and law prior to filing a pleading, such as the complaint herein, so that the factual and legal grounds asserted are at least *plausible* or reasonable under the circumstances. *See* Advisory Committee Notes to Rule 11. If a court finds that the party's attorney failed to conduct a reasonable pre-filing inquiry into the matter, then the court is obligated to impose sanctions, even upon a finding that the attorney had a good faith belief that the case was sound. *See Lucas v. Spellings*, 408 F.Supp.2d 8, 11 (D.D.C.2006); *see also Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir.2005), *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir.2001). Indeed, a

4

specific purpose of the 1993 revision of Rule 11 was to reject such a bad faith requirement. *See* Advisory Committee's Note saying that the amendments were "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."

Finally, once a district court finds sanctionable conduct, it has no discretion whether to impose sanctions. *See Westmoreland*, 770 F.2d at 1174. It exercises its discretion at that point by selecting an appropriate sanction. *Id.*

## II. Defendants Have Complied With the Procedural Requirements Necessary to Invoke Rule 11 Sanctions.

### A. Plaintiff Received Sufficient Notice of Defendants' Intention to Move for Rule 11 Sanctions.

Rule 11 provides a "safe harbor" for conduct offending Rule 11 by requiring notice of an intention to move for sanctions and by allowing an offending party a period of 21 days after such notice to withdraw improper pleadings without sanctions. *See* Fed. R. Civ. Pro. 11. In this case, Defendants did notify Plaintiff's counsel of her offenses under Rule 11 by letter on February 2, 2006. *See* Exhibit 1. That letter outlined in detail the specific factual and legal deficiencies that would support sanctions. Despite this notice, Plaintiff did not withdraw his Complaint. Rather, the Court was forced to dismiss Plaintiff's claims on March 21, 2006 (more than 21 days after Defendants' letter), upon Defendant's motion. *See* Order dated March 21, 2006.

Rule 11 also typically requires service of the Motion for Sanctions on the offending party 21 days before filing with the court in order for there to be sufficient notice of the offending conduct. *See* Fed. R. Civ. Pro. 11. In this case, however, the Court dismissed with prejudice Plaintiff's RICO and money laundering claims before Defendants could serve a copy of the Rule 11 motion on Plaintiff. This, however, does not bar Defendants from seeking Rule 11 sanctions. The Supreme Court has held that dismissal of a case does not "divest the District Court of

jurisdiction to consider [a] Rule 11 motion." *Cooter & Gell*, 496 U.S. at 398. And, "a litigant who violates Rule 11 merits sanctions even after a dismissal." *Id.* Indeed, the Supreme Court has held that "the violation of Rule 11 is complete when the paper is filed." *Id.* at 395 *quoting Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987). Therefore, because dismissal does not prevent Rule 11 sanctions and because there is no pleading for Plaintiff to withdraw, the requirement that the Rule 11 motion be served on Plaintiff 21 days before filing with the Court is moot. *See Pannonia Farms, Inc. v. USA Cable I*, 2004 WL 1276842, at *10-*11 (S.D.N.Y.) (Court ruled that a letter detailing the Rule 11 deficiencies without a motion was sufficient notice under the circumstances). In other words, Plaintiff (who had no intention to withdraw his Complaint) should not be able to avoid Rule 11 sanctions simply because the Court ruled quickly on Defendants' Motion to Dismiss.

**B.     This Court Has the Inherent Power To Sanction Plaintiff and His Counsel Irrespective of Rule 11.**

The court has inherent authority to punish misbehavior that occurs before it even if a statute or rule is not applicable. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). Unlike under Rule 11, the exercise of this power is subject to the requirement that it be based on a showing of bad faith. *See United States v. Wallace*, 964 F.2d 1214, 1219 (D.C.Cir.1992). *See Shepherd v. American Broad. Cos., Inc.*, 62 F.3d 1469 (D.C.Cir.1995). Furthermore, the sanction imposed must be carefully calibrated and be no greater than necessary to deter others from engaging in similar behavior. *See Bonds v. District of Columbia*, 93 F.3d 801, 808-13 (D.C.Cir.1996); *Shepherd*, 62 F.3d at 1478-80.

Given the facts and circumstances of this case, the Court is well within its power and discretion to impose sanctions upon Plaintiff and his counsel based on its inherent power to sanction and irrespective of Rule 11. As discussed in this Motion, Plaintiff's counsel has

demonstrated her bad faith in pursuing this action (despite the explicit repudiation by the majority of the members of the Tenants Association) by pursuing federal RICO and money laundering claims for the purpose of elevating this case to a federal forum and in order to seek media exposure for their case regardless of the damaging effects on Defendants' reputations.

### III.  A Proper Rule 11 Inquiry Would Have Revealed That Plaintiff Could Not Maintain His Federal Claims.

In the instant case, a reasonable inquiry into the facts or law upon which the plaintiff premises his claims would have revealed to Plaintiff and his counsel that the claims against Defendants had no merit. Therefore, this Court must impose sanctions.

#### A.  Plaintiff's RICO Claims Violate Rule 11.

Counts III and V of the Complaint both alleged a cause of action related to The Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, against all Defendants. Plaintiff ignored the primary purpose of RICO – to target organized crime. *See Edmondson and Gallagher v. Alban Towers Tenants Association,* 829 F. Supp. 420, 425 (D.D.C. 1993) *aff'd* 48 F.3d 1260 (D.C. Cir. 1995). RICO requires a plaintiff to prove a pattern of serious criminal conduct that the Plaintiff in this case knew or should have known did not exist. Instead, Plaintiff and his counsel used RICO allegations as a frivolous negotiating tactic. *See* Exhibit 2.

RICO authorizes civil suits by any person injured in his business or property by reason of a violation of § 1962. Section 1962, upon which Plaintiff relied prohibits a person employed by or associated with an enterprise effecting interstate commerce from conducting or participating ... in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" *See* 18 U.S.C. § 1962(c). To establish a civil RICO violation under subsection (c), a plaintiff must prove four elements: 1) the conducting (2) of an enterprise affecting interstate commerce (3) through a pattern (4) of racketeering activity. *See Pyramid Securities, Ltd. v. IB*

7

*Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1995)).

Regarding what constitutes a racketeering activity, RICO provides of list of qualifying crimes, including **murder, kidnapping, drug dealing, arson, robbery, bribery, and extortion** – clearly not the sort of activity truly contemplated by the Complaint. *See* 18 U.S.C. § 1961(1)(A). Additionally, for a pattern of racketeering activity to exist, RICO requires two or more predicate acts within 10 years of each other. *See* 18 U.S.C. § 1961(5); *see also Edmondson*, 48 F.3d at 1264.

### 1. Plaintiff failed to conduct a reasonable pre-filing inquiring on Defendant's conduct and the meaning of racketeering activity.

Any reasonable pre-filing inquiring into the law would have made Plaintiff's counsel aware of the serious criminal conduct required to constitute racketeering activity. And, any reasonable pre-filing inquiry into the facts would have shown that none of Defendants alleged conduct (much less Defendants' actual conduct) rose to meet the RICO burden.

In an effort to satisfy the racketeering element, however, Plaintiff alleged that Defendants attempted to, conspired to, or did extort money and property. *See* Complaint at ¶ 30. To support these claims, Plaintiff asserts that Defendants pressured tenants to consent to sale of the property to LaKritz Adler by contacting them and instructing them not to listen to dissident Mr. Moreno (Complaint at ¶ 30), by failing to maintain the apartment complex (Complaint at ¶ 31), by threatening the immigration status of tenants (Complaint at ¶ 33), and by soliciting proxies from tenants. *Id.* Even assuming, that the allegations of Count III and V are true (which they are not), they do not meet the elements of extortion and therefore cannot be the predicate acts underlying a civil RICO claim.

A reasonable pre-filing inquiry into the law would have revealed that extortion as it relates to racketeering is defined by federal law as:

> ... the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951(b)(2). Nothing in the Complaint suggests that actions that Plaintiff attributes to the defendants rose to the level of force or violence as described in the federal statute. Yet, Plaintiff chose to include these allegations in his Complaint and Plaintiff's counsel chose to publicize them in the local media.

Moreover, the activities that Plaintiff pleads as extortionate occurred more than six months *after* the sale of the Otis Place property. Specifically, Plaintiff dates the Defendants' allegedly coercive activities to on or about November 2005, while the Otis Place property was transferred in April 2005. See Complaint ¶¶ 30-33. Extortion involves acts undertaken to *obtain* wrongfully the property of another. *See United States v. Edwards*, 324 F.Supp.2d 10, 12 (D.D.C. 2004) (*citing* 18 U.S.C. § 1951(a)). Any acts undertaken after the fact could not support an extortion charge. Once again, Plaintiff's counsel failed to conduct even the bare minimum of research before leveling serious allegations, thus abusing the judicial process and impugning the reputation of the Defendants.

### 2. Plaintiff's counsel failed to conduct a reasonable pre-filing inquiry into the definition of "pattern of racketeering activity."

Any reasonable pre-filing inquiry into the law regarding the meaning of "pattern of racketeering activity" would have revealed on-point decisions in this Court and the Court of Appeals for the District of Columbia Circuit dismissing RICO claims stemming from the D.C. Rental Housing Conversion and Sale Act ("Sale Act"), the same statute relied upon by Plaintiff in the instant case. *See, e.g., Edmondson*, 829 F. Supp. at 425 *aff'd* 48 F.3d 1260, 1265. Indeed,

this Court relied on *Edmonson* (which Defendants cited in their Motion to Dismiss and defense counsel raised with Plaintiff's counsel in teleconferences) to dismiss Plaintiff's RICO claims with prejudice.

In *Edmonson*, plaintiff alleged that the defendants engaged in an elaborate scheme of bribery and deceit, which was intended to delay or prevent the sale of the apartments and to extort money from the plaintiff. Plaintiff alleged that the scheme included fraud, extortion, submitting fraudulent affidavits, bribing witnesses, and intentional concealment of material information. In finding that the case did not present a pattern of racketeering and ordering that the complaint be dismissed, the trial court stated as follows:

> The Court finds that, under the circumstances of this case, these alleged acts do not demonstrate a pattern of racketeering. Rather, what is alleged is a simple scheme, directed at a single victim, and resulting in a single distinct injury – namely, the alleged interference with the contractual rights of E&G vis-à-vis Georgetown. This is insufficient to state a RICO claim.
>
> Although RICO is an important law which has done much good to combat organized crime, too many private litigants have distorted the law in an effort to reach activities RICO never intended to address. It is a blatant misapplication of RICO's treble damages remedy to seek to reach ordinary commercial activities such as that alleged by E&G. As the Ninth Circuit has observed "RICO has intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.
>
> * * * *
>
> Based on the facts of this case, it is clear there is no basis for RICO claim... . Even if it could be established that the Defendants devised a "scheme," it would have been to accomplish one discrete goal, not a conspiracy in violation of RICO.

829 F. Supp. at 425 (Citations and footnotes omitted). On appeal, the D.C. Circuit affirmed and stated as follows:

> Plaintiffs here have alleged only a single scheme – to prevent of delay the sale of Alban Towers, or to secure a ransom for allowing the sale to proceed. Moreover, the scheme entails but a single discrete injury, the loss of sale (or payment of the ransom), suffered by a small number of victims... . We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiff to state a RICO claim.

*Edmondson & Gallagher v. Alban Towers Tenants Association*, 48 F.3d 1260, 1265 (D.C. Cir. 1995).

Rather than conducting the above-referenced research, which would have presumably kept her from filing the frivolous RICO claims, Plaintiff's counsel apparently figured that just making the allegations in court and the local media would bring the Defendants to the negotiating table. *See* Exhibit 2. This careless attitude regarding the requirements of a RICO and the damaging effects on Defendants' reputations is unprofessional and merits sanctions.

B.   **Plaintiff's Money Laundering Claims Violate Rule 11.**

In Count IV of the dismissed Complaint, Plaintiff purports to bring a claim under 18 U.S.C. § 1957, a criminal money laundering statute. There is, however, no language in this criminal statute creating a private cause of action. *See Thompson v. Kramer*, 1994 WL 725953 (E.D.Pa.). Indeed, rarely is there a private right of action under a criminal statute. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). Where such a right has been found, it is because "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975). But here, as in *Cort*, "there was no more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Id.* at 79-80. A simple reading of the statute would have informed counsel that there could be no private cause of action. But, apparently, counsel did not read the statute; or, if she did, then she ignored the plain meaning of the statute and brought this

claim against the Defendants anyway. Moreover, when challenged by Defendants in a motion to dismiss, Plaintiff's counsel simply ignored this argument and did not or could not explain the claim.

Further illustrating that the claim was frivolous, Plaintiff's counsel failed to argue for extending or modifying existing law regarding this criminal statute despite that the law provides a simple argument under such circumstances. In *Cort v. Ash*, the Supreme Court identified four factors to be used in determining whether a private right of action should be implied from a statutory scheme: (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted, (2) whether there is any indication of legislative intent to create or deny a private right, (3) whether it would be consistent with the purposes of the underlying statutory scheme to create a private right, and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78. Here, none of these elements are met. Tellingly, though, Plaintiff's counsel made no attempt to argue that any of the elements for extension are met.

## CONCLUSION

Plaintiff and his counsel violated Rule 11 by failing to conduct a reasonable pre-filing inquiry into the facts and law governing the Complaint, and by continuing to prosecute the Complaint after LaKritz Adler notified Plaintiff of the deficiencies in the Complaint as required by Rule 11. Plaintiffs have ignored both the applicable legal standard, as well as the absence of evidentiary support to maintain this action.

For the foregoing reasons, LaKritz Adler respectfully requests this Court enter an Order imposing sanctions against Plaintiff and his counsel in accordance with Rule 11 and in accordance with the Court's inherent power to sanction. Additionally, LaKritz Adler requests

that Plaintiff and his counsel be held jointly and severally liable for Defendants' reasonable attorneys' fees, costs and expenses.

                                          Respectfully submitted,

                                          HOLLAND & KNIGHT, LLP

                                          _____
                                          Paul J. Kiernan (DC Bar # 385627)
                                          2099 Pennsylvania Avenue, N.W., Suite 100
                                          Washington, D.C. 20006
                                          (202) 663-7276
                                          (202) 955-5564 – fax

Of counsel:

Rafael E. Alfonzo (DC Bar # 478524)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 955-3000
(202) 955-5564 – fax

# 3683019_v1

13